DECISION AND JUDGMENT
{¶ 1} This is an appeal from a judgment of the Wood County Court of Common Pleas, Domestic Relations Division, in which the trial court granted a divorce to appellant/cross-appellee, Dennis P. Bils, and appellee/cross-appellant, Beth A. Bils. For the reasons that follow, we affirm in part and reverse in part.
 {¶ 2} Appellant/cross-appellee sets forth the following assignments of error: *Page 2 
 {¶ 3} "I. The trial court erred when it included the crops in storage as marital assets subject to division.
 {¶ 4} "II. The trial court erred when it arbitrarily refused to adopt appellant's tracing of his separate property interests in farm land and farm equipment and double counted the value of specific assets.
 {¶ 5} "III. The trial court erred in determining appellant's spousal support and child support obligations and in ordering appellant to secure those payments through life insurance when no evidence of such insurance exists.
 {¶ 6} "IV. The trial court erred in finding that the incurring of $108,000 of credit card debt by appellee did not constitute financial misconduct.
 {¶ 7} "V. The trial court erred in requiring appellant to pay $10,000 toward appellee's fees and expenses."
 {¶ 8} Appellee/cross-appellant sets forth the following assignments of error:
 {¶ 9} "I. The trial court erred in setting spousal support in an inadequate amount and for a short, fixed period of time.
 {¶ 10} "II. The trial court erred when it awarded appellee/cross appellant only partial attorney fees and then declared such to be `spousal support.'"
 {¶ 11} The undisputed facts are as follows. The parties were married in November 1981. They had three children, only one of whom was a minor when they divorced on July 3, 2007. Appellee was primarily a homemaker during the marriage and appellant was a self-employed farmer. The judgment entry of divorce ordered appellant to pay *Page 3 
appellee periodic spousal support for seven years and child support. Appellant was ordered to pay appellee a net equalization payment of $142,688.74 and a lump sum of $13,250, which constituted one-half of the fair market value of additional marital property.
 {¶ 12} In his first assignment of error, appellant contends that the trial court erred in considering crops to be marital property. This is because the crops, valued at $222,368, were appellant's only source of income. As such, the value of the crops was used in the calculation of spousal support. Appellant contends it is inequitable to consider the value of the crops for both purposes of marital property division and spousal support.
 {¶ 13} The Supreme Court of Ohio has long recognized that "* * * trial courts are vested with broad powers in determining the appropriate scope of property awards in divorce actions." Berish v. Berish (1982),69 Ohio St.2d 318, 319. Therefore, "[a] reviewing court may modify or reverse a property division, if it finds that the trial court abused its discretion in dividing the property as it did." Cherry v. Cherry (1981),66 Ohio St.2d 348, 355. This court will not substitute our judgment for that of the trial court, unless we find that the trial court's property division involved an unreasonable, arbitrary or unconscionable decision.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 14} R.C. 3105.171(A)(3)(a)(i), (ii) defines marital property as being:
 {¶ 15} "All real and personal property that currently is owned by either or both of the spouses * * * that was acquired by either or both of the spouses during the marriage; *Page 4 
[a]ll interest that either or both of the spouses currently has in any real or personal property * * * that was acquired by either or both of the spouses during the marriage."
 {¶ 16} In finding the crops to be marital property, the trial judge cited this court's decision in Walston v. Walston (Sept. 29, 1995), 6th Dist. No. WD-94-057, wherein we found a farmer's crops in the field to be marital property. Appellant distinguishes the facts inWalston from the instant case in that no spousal support was ordered inWalston and, in the instant case, appellant's sole source of income came from the crops. While appellant is correct that no spousal support was awarded in Walston, the appellant in Walston is similar to appellant in that his sole source of income came from his work as a farmer.
 {¶ 17} The Third District Court of Appeals in Burks v. Burks (Sept. 12, 1996), 3d Dist. No. 16-96-2, also found crops to be divisible marital property. In that case, the crops were produced on 160 acres of land that was purchased during the marriage. The court, in effect, recognized that the crops could have a dual nature in stating that even if the crops amounted to earned income, that did not change the fact that by definition, the crops also constituted marital property.
 {¶ 18} We find the facts in this case analogous to Burks. Here, the crops at issue were produced on land, some of which appellee has a marital property interest in. While it may be true that the crops constitute appellant's only income, that does not change the fact that the crops meet the definition of marital property as that term is defined in R.C. 3105.171(A)(3)(a)(i), (ii). We further note that earned income is only one of the many *Page 5 
factors Courts look at when determining spousal support pursuant to R.C. 3105.18. Finding no abuse of discretion in the court's determination of the crops as marital property, appellant's first assignment of error is found not well-taken.
 {¶ 19} In his second assignment of error, appellant contends that the court miscalculated the value of his premarital farm property. First, appellant contends that the trial court miscalculated the value of the Bumpus farm and the Whitaker farm which where acquired before the marriage. Appellant contends that the trial court should have considered the properties' appreciation in value from the date of the marriage until trial. Appellant contends that the amount of appreciation, approximately $85, 000, should be deemed his separate property.
 {¶ 20} The trial court found that 51.75 percent of the Bumpus and Whitacre farms became marital property as the mortgage obligations were paid off. The court looked at the following evidence. At the time of the marriage, the Bumpus farm was worth $110,000 and the Whitacre farm was worth $130,000. Their values at the time of trial were $132,000 and $193,427, respectively. Five months after the marriage, the combined debt of the two properties was $139,000. The original mortgage on the two properties was taken out before the marriage for $149,000. The mortgage was paid off and discharged after the marriage in 1985. The parties then jointly took out a mortgage on the two properties for $135,000. This mortgage was paid off and discharged in 2003. Further, the evidence showed that these properties were maintained and improved throughout the marriage with marital funds. *Page 6 
 {¶ 21} We review a trial court's determination of the value of marital property for an abuse of discretion. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131; Berish v. Berish, supra. "Our task on appeal is not to require the adoption of any particular method of valuation, but to determine whether, based on all the relevant facts and circumstances, the court abused its discretion in arriving at a value." James v.James (1995), 101 Ohio App.3d 668, 681. Since there is sufficient evidence to support the trial court's finding that 51.75 percent of the properties are marital property, no abuse of discretion occurred.
 {¶ 22} Appellant next contends that the court erred in valuing his interest in certain farm equipment. The trial court found that the parties owned $247,500 worth of farm equipment and that any separate property interests appellant had in the equipment transmuted into marital property.
 {¶ 23} Transmutation is the process by which property that would otherwise be separate is converted into marital property. Frederick v.Frederick (Mar. 31, 2000), 11th Dist. No. 98-P-0071. R.C. 3105.171(A)(6)(b) provides:
 {¶ 24} "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable."
 {¶ 25} Thus, traceability is the focus when determining whether separate property has lost its separate character after being commingled with marital property. When separate funds have been used to purchase other property, a trial court may still apply the transmutation factors set forth in Kuehn v. Kuehn (1988), 55 Ohio App.3d 245, to *Page 7 
determine traceability; i.e., "(1) the expressed intent of the parties, insofar as it can be reliably ascertained; (2) the source of the funds, if any, used to acquire the property; (3) the circumstances surrounding the acquisition of the property; (4) the dates of the marriage, the acquisition of the property, the claimed transmutation, and the breakup of the marriage; (5) the inducement for and/or purpose of the transaction which gave rise to the claimed transmutation; and (6) the value of the property and its significance to the parties." Id. at 246. See, also, Lewis v. Lewis, 11th Dist. No. 2002-P-011, 2003-Ohio-5006;Hildebrand v. Hildebrand, 5th Dist. No. CA 954, 2003-Ohio-3654.
 {¶ 26} Certified public accountant Christiana K. Nietz testified she was retained by appellant to determine if the farm equipment appellant owned before 1981 could be traced to assets owned as of the date of trial. In determining that some of the equipment was traceable, she acknowledged that she did not take into account the value of the assets before the marriage, any marital funds that may have been used to maintain the equipment or any marital funds that may have been used to pay off the premarital debt on the equipment. Given this evidence, we cannot say that the trial court erred in finding that the property transmuted into marital property.
 {¶ 27} Finally, appellant contends that the court erred in double counting certain assets. This error was recognized and corrected by the court in a May 10, 2007 judgment entry. Appellant's second assignment of error is found not well-taken.
 {¶ 28} In his third assignment of error, appellant contends that the court erred in computing his income for purposes of spousal and child support. Specifically, appellant contends that the trial overstated his depreciation expense. *Page 8 
 {¶ 29} In order to compute an obligor's spousal support and child support obligations, a trial court must determine both parties' annual income. See R.C. 3105.18 and R.C. 3119.02. Decisions regarding support obligations are within the discretion of the trial court and will not be disturbed without an abuse of discretion. Rock v. Cabral (1993),67 Ohio St.3d 108.
 {¶ 30} The trial court must deduct ordinary and necessary expenses from a parent's gross receipts when calculating the gross income of that self-employed parent. Foster v. Foster, 150 Ohio App.3d 298,2002-Ohio-6390. Ordinary and necessary expenses "[do] not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business," except as "specifically included in `ordinary and necessary expenses incurred in generating gross receipts' by division (C)(9)(a) of this section[.]" R.C. 3119.01(C)(9)(b). R.C. 3119.01(C)(9)(a) defines ordinary and necessary expenses as "actual cash items expended * * * and includes depreciation expenses of business equipment [.]"
 {¶ 31} "When evidence to support a claim for depreciation expenses is absent from the record, it is not an abuse of discretion for the trial court to disallow those expenses and include them as income." In reSullivan, 167 Ohio App.3d 458, 465, 2006-Ohio-3206, citing Wittbrot v.Wittbrot, 2d Dist. No. 2002 CA 19, 2002-Ohio-6075 and Foster v.Foster, supra.
 {¶ 32} The trial court in this case found that for purposes of support, appellant's yearly income was $117,433.33. The court arrived at this figure by averaging appellant's *Page 9 
income for three years. Specifically, the trial court combined the amount of appellant's farm income listed on his 2002, 2003 and 2004 income tax return with the amount of depreciation he claimed on his income tax forms for each of the three years. Appellant contends that the court erred in not excluding the actual amounts appellant spent for actual cash depreciation expenses.
 {¶ 33} In support, appellant cites to his 4562 income tax forms for the years 2002, 2003 and 2004 which include Section 179 expense deductions in the amount of $24,000, $21,563 and $45,698, respectively. Two of the tax returns contain lists of the actual property purchased. Appellant testified that those amounts represented his actual cash purchases of farm equipment, one of which was a combine. Because there was evidence before the court that portions of appellant's depreciation deductions for the relevant three years included actual cash expenditures, we conclude that the court abused its discretion in including those amounts when computing appellant's income for purposes of support.
 {¶ 34} Appellant next contends that the court erred in ordering him to maintain life insurance to secure his spousal support obligation. A trial court may secure a spousal support order with life insurance, but only if the court makes it clear that it is, in effect, ordering spousal support to extend beyond the death of the obligor. Forbis v.Forbis, 6th Dist. Nos. WD-04-056, WD-04-063, 2005-Ohio-5881, citing R.C. 3105.18(B) (spousal support ends at death of either party, unless court orders otherwise); Waller v. Waller, 163 Ohio App.3d 303,2005-Ohio-4891; Woodrome v. Woodrome (Mar. 26, 2001), 12th Dist. No. CA00-05-074; Vlah v. Vlah (Nov. 28, 1997), 11th Dist. No. 97-G-2049;Pope v. *Page 10 Pope (Apr. 11, 1997), 6th Dist. No. L-96-198; Moore v. Moore (1997),120 Ohio App.3d 488; Addy v. Addy (1994), 97 Ohio App.3d 204; McCoy v.McCoy (1993), 91 Ohio App.3d 570.
 {¶ 35} Here, the trial court specifically ordered appellant's spousal support obligation to terminate upon the death of either party. Accordingly, the trial court abused its discretion in ordering appellant to acquire and maintain life insurance.
 {¶ 36} Appellant's third assignment of error is found well-taken.
 {¶ 37} In his fourth assignment of error, appellant contends that the court erred in not finding that appellee had engaged in financial misconduct by incurring $108,000 in credit card debt.
 {¶ 38} R.C. 3105.171(E)(3) provides: "[I]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." The burden of proving financial misconduct is on the complaining party. Gallo v. Gallo, 11th Dist. No. 2000-L-208, 2002-Ohio-2815, ¶ 43. When determining whether to make a distributive award on the grounds of financial misconduct, the court must consider all of the factors identified in R.C. 3105.171(F) and any other factors it deems relevant. Because R.C. 3105.171(E)(3) states that the court "may" compensate the offended spouse for the financial misconduct of the other spouse, the trial court's decision to make or not make a distributive award to compensate for financial misconduct is reviewed under an abuse of discretion standard. Huener v. Huener (1996),110 Ohio App.3d 322, 326. *Page 11 
 {¶ 39} "The financial misconduct statute should apply only if the spouse engaged in some type of wrongdoing. Hammond v. Brown (Sept. 14, 1995), 8th Dist. No. 67268. `Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets.' Id. The time frame in which the alleged misconduct occurs may often demonstrate wrongful scienter, i.e., use of marital assets or funds during the pendency of or immediately prior to filing for divorce. See Babka v. Babka (1992), 83 Ohio App.3d 428
(account liquidated `just prior to the parties' divorce'); Gray v.Gray (Dec. 8, 1994), 8th Dist. No. No. 66565, unreported (transferring or withdrawing funds during separation period in order to secret them from the other spouse); Spychalski v. Spychalski (1992),80 Ohio App.3d 10 (dissipation of wrongful death settlement obtained while parties divorce complaint was pending)." Jump v. Jump (Nov. 30, 2000), 6th Dist. No. L-00-1040.
 {¶ 40} The record shows that appellee incurred a large amount of credit card debt due in a large part to appellant's unwillingness to give her money for household expenses while, at the same time, insisting that appellee remain unemployed. Appellee testified she used the cards to pay for groceries, household furnishings, clothing for the children, family medical expenses and other daily expenses. In addition, she uses her cards to pay off some of the debt on other cards in an attempt to reduce the debt. She also borrowed money from other family members to pay for the household expenses. The debt was incurred over the course of a couple of years before the parties sought to end their marriage. The trial court acknowledged that appellee may not have used the best *Page 12 
financial judgment in incurring the debt, but the court found no evidence that appellee's actions were fraudulent and appellant presented no convincing evidence of fraud. Accordingly, we cannot say that the trial court abused its discretion in finding that appellee did not engage in financial misconduct. Appellant's fourth assignment of error is found not well-taken.
 {¶ 41} In his fifth assignment of error, appellant contends that the trial court erred in awarding appellee $10,000 in attorney fees. R.C. R.C. 3105.73(A) provides:
 {¶ 42} "In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."
 {¶ 43} Appellant bases this argument on his allegation that appellee engaged in fraudulent misconduct with regard to the credit card debt. Having already determined that appellee did not engage in fraudulent misconduct, we find that the court did not abuse its discretion in awarding appellee attorney fees. Appellant's fifth assignment of error is found not well-taken.
 {¶ 44} In light of our determination of appellant's third assignment of error, we need not address appellee/cross-appellant's assignments of error as they involve the amount of appellee's spousal award, the calculation of which we have found to be in *Page 13 
error. Accordingly, appellee/cross-appellant's assignments of error are not ripe for review at this time.
 {¶ 45} On consideration whereof, this court finds that substantial justice was not done the party complaining and the judgment of the Wood County Court of Common Pleas, Domestic Relations Division, is reversed as to the calculation of appellant's income and remanded for recalculation of appellant's income for purposes of support, consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Arlene Singer, J., Thomas J. Osowik, J., CONCUR. *Page 1