DECISION AND JUDGMENT
{¶ 1} This case is before the court on appeal from the judgment of the Wood County Court of Common Pleas, Domestic Relations Division, which, on December 26, *Page 2 
2007, [1] entered a judgment entry of divorce as between appellee, Cheri J. Diller Skibicki, and appellant, Richard Skibicki. Appellee filed for divorce on August 2, 2005. In granting the divorce, and in relevant part to this appeal, the trial court ordered appellant to pay spousal support, commencing on January 1, 2007, in the amount of $4,000 per month for a period of 24 months, $3,000 per month for a period of 24 months, $2,000 per month for a period of 48 months, and $1,000 per month for a period of 24 months. Appellant was ordered to maintain life insurance coverage payable to appellee in an amount sufficient to cover his outstanding child support and spousal support obligation. The parties' retirement accounts were ordered to be divided as follows: appellee was to retain, free and clear from any claim by appellant, her ING account (valued at $51,861) and her St. Vincent Hospital account (valued at $10,000); appellee was also awarded one-third of appellant's ING account (valued at $77,342); and appellant was awarded the remaining two-thirds of his ING account, an additional ING account (valued at $5,306), and his 403(b) account. Appellant was ordered to pay $6,000 toward appellee's attorney fees and was ordered to pay the following debt: (1) the loan obligation owing on his retirement account; (2) his MBNA credit card; (3) his Discover card; (4) his two Sky Bank signature loans; (5) his tax deferred annuity obligations totaling $34,000; (6) any other loan or debt he has incurred in his own name, including his auto loan; (7) the balance due and owing to the IRS, the state of Ohio and the Bowling Green School *Page 3 
District for tax deficiencies from the 2004 joint income tax returns; and (8) the accounting bill owed to J. Schroeder, CPA, for $1,356.30.
 {¶ 2} Appellant timely appealed the decision of the trial court and raises the following assignments of error:
 {¶ 3} 1. "The trial court erred in determining appellant's spousal support obligation."[2]
 {¶ 4} 2. "The trial court erred in awarding an unequal division of marital retirement accounts."
 {¶ 5} 3. "The trial court erred in requiring appellant to maintain life insurance coverage sufficient to cover his outstanding support obligations, without limiting its order to the life insurance coverage then in existence."
 {¶ 6} 4. "The trial court erred in ordering appellant to pay tax deficiencies for 2004 resulting from appellee's failure to report as income her withdrawals from retirement accounts and her default on repayments of retirement loans, as well as accounting fees incurred as a result of the assessment levied against the parties."
 {¶ 7} 5. "The trial court erred in entering its order as to the marital real estate without adopting the stipulation of the parties entered on February 2, 2007."[3] *Page 4 
 {¶ 8} 6. "The trial court erred in requiring appellant to pay $6,000 toward appellee's attorney fees and expenses."[4]
 {¶ 9} As set forth in Fletcher v. Fletcher (1994), 68 Ohio St.3d 464,468, in reviewing a trial court's decisions in a divorce proceeding, this court will not re weigh the evidence introduced in a trial court, but will uphold the findings of the trial court when the record contains some competent evidence to sustain the trial court's conclusions. See also Ross v. Ross (1980), 64 Ohio St.2d 203. This court will also indulge all reasonable presumptions consistent with the record in favor of the trial court's decisions on questions of law. In re Sublett
(1959), 169 Ohio St. 19, 20. "When a trial court, sitting without a jury, determines an issue but does not make separate findings of fact and conclusions of law, a reviewing court will presume the validity of that judgment as long as there is evidence in the record to support it."Fletcher, citing, Scovanner v. Toelke (1928), 119 Ohio St. 256, paragraph four of the syllabus.
 {¶ 10} In this case, following trial on October 27 and November 27, 2006, the magistrate entered a decision on January 17, 2007, which was adopted by the trial court on December 19, 2007. With respect to the parties' finances, the trial court made the following findings. Appellee earned $3,377, $8,000, and $13,204 during the years 2003 through 2005, respectively, and was employed, at the time of the trial, in a position where she worked 24 hours per week, at $70 per hour, for a projected yearly income of $84,000. *Page 5 
Appellee only worked part-time throughout the duration of the 30-year marriage in order to care for the children and the family household. She was 52 years of age at the time of the trial. The trial court found that appellee was capable of working full-time, and would earn $140,000 annually if she made the same hourly wage; however, given appellee's age, the trial court held that it was unlikely that she would find employment at the same level of compensation as her husband for the remainder of her career. Appellant, who was also 52 years of age, had income of $191,798, $248,678, $283,924, and $284,448 during the years 2003 through 2006, respectively.
 {¶ 11} With respect to the parties' respective retirement accounts, the court found that appellee had two retirement accounts valued at $51,861 (ING account) and $10,000 (St. Vincent Hospital account). Appellant had three retirement accounts. After deducting outstanding loans taken against the accounts by appellant, his accounts were valued at $13,096.23 (403(b) account), $77,343 (ING account), and $5,306 (ING account). The court found that the parties enjoyed a high style of living, owning horses, traveling on vacation, and owning a home worth approximately $300,000 and, as such, liquidated some retirement assets. The court found that, although there had been no financial misconduct, it was fair and equitable to divide the retirement assets so that appellee "receives a larger share of the retirement assets due to her absence from a job similar to husband's while she remained at home to care for the children and the family household." *Page 6 
 {¶ 12} Because of "the significant disparity in income" at the time of trial, the court ordered appellant to pay $6,000 toward the amount of reasonable attorney fees incurred by appellee, which totaled $11,917.75. The balance of $902.50 owed to the guardian ad litem was ordered divided between the parties. Although the court found that the additional tax deficiencies resulted from appellee's actions, the court ordered appellant to pay the amounts owed for 2004, including, $7,346 to the IRS, $969 to the state of Ohio, and $108 to the Bowling Green School District.
 {¶ 13} Finally, the court found that appellee set forth reasonable monthly expenses of approximately $8,000 per month, and appellant set forth reasonable monthly expenses of approximately $11,000 per month. There was no value in any marital home to be divided and the personal property was deemed to have been equally divided between the parties.
 {¶ 14} Appellant argues in his second assignment of error that the trial court abused its discretion in awarding an unequal division of marital retirement accounts. Appellant asserts that the trial court erred in finding that it would be "fair and equitable to divide the retirement assets" to provide appellee with a "larger share of (those) assets due to her absence from a job similar to husband's while she remained at home to care for the children and the family household" because he testified that he was as involved with the children as much as, if not more than, appellee. Appellant also objects to the trial court's *Page 7 
finding that it was unlikely that appellee would be able to find employment "at the same level of compensation as her husband for the remainder of her career" because appellee worked as a medical doctor, engaged in the private practice of medicine, throughout their entire marriage.
 {¶ 15} The division of marital property shall be equal. R.C. 3105.171(C)(1). However, "[i]f an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." Id. In making a division of marital property, the court shall consider all relevant factors, including those set forth in R.C. 3105.171(F). Id. The factors set forth in R.C. 3105.171(F) include the following: "(1) The duration of the marriage; (2) The assets and liabilities of the spouses; (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage; (4) The liquidity of the property to be distributed; (5) The economic desirability of retaining intact an asset or an interest in an asset; (6) The tax consequences of the property division upon the respective awards to be made to each spouse; (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property; (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses; (9) Any other factor that the court expressly finds to be relevant and equitable." *Page 8 
 {¶ 16} In this case, the parties were married 30 years, during appellee's entire medical career. During this time, appellee testified that she only worked part-time in order to be able to care for the parties' children. It is not contested that appellant spent time with his family also; however, his commitment to his children does not change the fact that appellee, who was employed on a part-time basis only throughout the marriage, could not build a full-time career in the medical profession as appellant was able to accomplish. As such, the trial court's determination, that it is unlikely that appellee, who was 52 years old at the time of the trial, would be able to earn as much as appellant during the balance of her career, is supported by the record. Moreover, we note that appellee was still employed only part-time at the time of the trial and made significantly less per hour ($70 per hour) than appellant ($115 per hour), and was likely to do so for the balance of her career.
 {¶ 17} Given the disparity in incomes, future earning abilities, and the high standard of living that the parties aspired to during the marriage, we find that the trial court's determination that an equal distribution of the retirement funds would be inequitable under these circumstances was supported by some competent evidence in the record. We further find that the trial court's award of approximately $10,000 more in retirement funds to appellee, than to appellant, was not an abuse of discretion in this case. Appellant's second assignment of error is therefore found not well-taken. *Page 9 
 {¶ 18} Appellant argues in his third assignment of error that the trial court erred in requiring appellant to maintain life insurance coverage sufficient to cover his outstanding support obligations, without limiting its order to the life insurance coverage then in existence. Appellant's life insurance policy in existence at the time of the trial was through his employer. Appellant asserts that he has no control over the premiums paid, the coverage afforded, or the continuation of such insurance. Because it is impermissible for a court to require a party who does not have life insurance to acquire such insurance to cover a support obligation, appellant argues that the trial court's order must be clarified and revised so that appellant is not required to obtain other life insurance at a later time, in the event that his present coverage ends.
 {¶ 19} The trial court ordered appellant to pay $4,000 per month for 24 months, $3,000 per month for 24 months, $2,000 per month for 48 months and $1,000 per month for 24 months, beginning January 1, 2007. The trial court then stated that "[t]his amount shall terminate upon the death of either party or Wife's cohabitation with an unrelated adult or her remarriage." The trial court then ordered in the next paragraph that appellant "shall maintain life insurance payable to Wife in an amount sufficient to cover his outstanding child support and spousal support obligation."
 {¶ 20} R.C. 3105.18(B) states that "[a]ny award of spousal support made under this section shall terminate upon the death of either party, unless the order containing the award expressly provides otherwise." This court has held that "[a] trial court may secure *Page 10 
a spousal support order with life insurance, but only if the court makes it clear that it is, in effect, ordering spousal support to extend beyond the death of the obligor." Bils v. Bils, 6th Dist. No. WD-07-043,2008-Ohio-4125, ¶ 34. It is unreasonable and arbitrary to order a party to acquire life insurance as security for payment of spousal support; however, if a life insurance policy already exists, requiring it to be used as security for spousal support is not an abuse of discretion.Pope v. Pope (Apr. 11, 1997), 6th Dist. No. L-96-198.
 {¶ 21} In this case, although the trial court stated that spousal support terminates upon the death of either party, its order regarding life insurance clearly expressed its desire to have appellant's obligation continue after death. Because life insurance was already in effect at the time of the trial, the trial court could order appellant to name appellee the beneficiary on that policy for purposes of paying any spousal support owed after appellant's death.
 {¶ 22} However, we find that the trial court's order needs to be clarified with respect to the award of life insurance. Specifically, appellant's policy is through his employer and, as such, appellant has no control over the premium paid, the coverage afforded, or the duration or continuation of such coverage. The trial court has failed to address what effect changes in the terms, premiums or coverage of the employer-provided life insurance policy would have on appellant's responsibility to maintain life insurance. As noted above, a party cannot be ordered to acquire life insurance as security for payment of spousal support. See Pope, supra. Thus, if appellant's policy is cancelled *Page 11 
or terminated by his employer, we find that any order requiring appellant to maintain other life insurance, that is not supplied by his employer, would be contrary to law.
 {¶ 23} Accordingly, we find appellant's third assignment of error well-taken. This case should be remanded to the trial court to further consider its order concerning life insurance and, where necessary, delineate any additional terms necessary to conform its order to current law.
 {¶ 24} In his fourth assignment of error, appellant argues that the trial court erred in ordering him to pay the tax deficiencies for 2004, and the additional accounting fees incurred due to the assessment levied against the parties, because said deficiencies resulted from appellee's failure to report as income her withdrawals from retirement accounts and her default on repayments of retirement loans. Specifically, appellant argues that the trial court's order is contrary to findings of fact numbered 22 and 23, wherein the court found:
 {¶ 25} "22. In addition, it appears that the parties incurred tax deficiencies in excess of $21,000.00 at the time they filed their 2004 joint income tax returns. This deficiency was the sole result of the failure of Plaintiff to report withdrawals of $16,865.00 made by her from retirement accounts during 2004, as well as apparent default by her on repayment of a retirement account obligation. According to the testimony of the CPA who filed the returns on behalf of the parties, Plaintiff did not *Page 12 
report these activities to him when she provided him with her tax information on either the 14th or 15th of April, 2005.
 {¶ 26} "23. As a result of the foregoing Finding, the parties are now obligated to pay $7,346.00 to the Internal Revenue Service, plus $969.00 to the State of Ohio and $108.00 to the Bowling Green School District. Defendant has already agreed to reduce the outstanding obligation to the taxing authorities by contributing his portion of the 2005 State of Ohio refund received by the parties."
 {¶ 27} Upon review of the record, we find that the trial court did not abuse its discretion in determining that appellant should bear the expense of the additional taxes levied against the parties during the 2004 tax year. Although the trial court attributed the error in the 2004 tax return to appellee, the parties were married at the time of the withdrawals and filed a joint tax return. Because the funds were used during the marriage and the taxes were the obligation of both parties, and based on the trial court's determination regarding appellant's income, which was substantially greater than appellee's, both at the time of the trial and during the 2004 tax year, we find that it was not arbitrary, capricious or unreasonable for the trial court to require appellant to pay the tax liability on these funds. Furthermore, based upon appellant's control of the parties' finances during the marriage and appellee's testimony that she informed appellant of the withdrawals, we find that it was not an abuse of discretion for the trial court to order *Page 13 
appellant to pay the additional accounting expenses associated with the error in the 2004 tax return. Appellant's fourth assignment of error is therefore found not well-taken.
 {¶ 28} On consideration whereof, this court finds that the judgment of the Wood County Court of Common Pleas, Domestic Relations Division, is affirmed, in part, and reversed, in part. This case is remanded to the trial court for further consideration and clarification regarding its order that appellant maintain life insurance as security for spousal support obligations existing at the time of his death. The balance of the trial court's decision is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
AFFIRMED, IN PART, AND REVERSED, IN *Page 14 
PART. A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., William J. Skow, P.J., Thomas J. Osowik, J., Concur.
[1] The trial court's judgment was journalized on January 3, 2008.
[2] Appellant voluntarily withdrew his first assignment of error on January 21, 2009. This assignment of error therefore will not be addressed by this court.
[3] Appellant voluntarily withdrew his fifth assignment of error on October 31, 2008. This assignment of error therefore will not be addressed by this court.
[4] Appellant voluntarily withdrew his first assignment of error on January 21, 2009. This assignment of error therefore will not be addressed by this court. *Page 1