### In re SULLIVAN.

[Cite as *In re Sullivan,* 167 Ohio App.3d 458, 2006-Ohio-3206.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

Nos. 2005–G–2641 and 2005–G–2642.

Decided June 23, 2006.

William M. Goldstein, for appellee and cross-appellant.

Randall M. Perla, for appellant and cross-appellee.

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} Appellant and cross-appellee, Patrick J. O'Connor, appeals from a decision of the Geauga County Court of Common Pleas, Juvenile Division, regarding child support. Appellee and cross-appellant, Mary Sullivan, appeals the same judgment.

{¶ 2} On December 3, 1994, a child named Liam Patrick Sullivan was born to Sullivan. O'Connor was listed as the father on Liam's birth certificate. O'Connor and Sullivan were not married. O'Connor was later confirmed as Liam's father through paternity testing. Immediately following Liam's birth and consistently until approximately March 2004, O'Connor paid $700 per month to Sullivan. This de facto child support figure was negotiated and agreed to by the parties immediately following Liam's birth.[1]

---

1. Although there is disagreement in the record as to the other terms contained in a written agreement executed between the parties, this monthly figure is not disputed.

{¶ 3} Throughout Liam's life, O'Connor visited Sullivan and Liam and contributed in other ways to Liam's support. O'Connor paid one-half of Liam's parochial-school tuition and also recently added Liam to his medical insurance.

{¶ 4} In March 2004, as a result of a request by Sullivan, the Geauga County Child Support Enforcement Agency determined O'Connor's child support obligation to be $563.62 per month as of March 3, 2004. Sullivan then appealed that determination by filing the underlying action with the trial court. On April 15, 2005, the trial court ordered O'Connor to pay $1,512.35 per month as child support and ordered an additional payment per month plus poundage on arrears that had accumulated since March 31, 2004 (the date of Sullivan's filing with the trial court).

{¶ 5} On April 29, 2005, Sullivan filed a motion for reconsideration, motion for new trial, and motion for clarification as a result of the trial court's April 15, 2005 decision. The trial court granted the clarification request in a separate judgment entry dated May 2, 2005, and denied the other relief sought by Sullivan.[2] Both Sullivan and O'Connor timely appealed the trial court's decision on the merits.[3]

{¶ 6} O'Connor asserts the following assignments of error:

{¶ 7} "[1.] The trial court erred and abused its discretion in including retained earnings from appellant's business and 'income' from partnerships and subchapter S corporations partially owned by appellant as personal, disposable income of appellant in calculating appellant's income for purposes of determining child support.

{¶ 8} "[2.] The trial court erred and abused its discretion in including $10,980 in depreciation expenses taken by O'Connor Building Supply and $10,907 in depreciation expenses taken by Sugar Ridge Land Development Corporation in appellant's personal disposable income for purposes of determining child support.

{¶ 9} "[3.] The trial court erred and abused its discretion in failing to average income of appellant over a reasonable period of years in calculating income for purposes of determining child support."

{¶ 10} In Sullivan's cross-appeal, she asserts a single assignment of error:

{¶ 11} "[1.] The trial court erred in not following *DePalmo, appellant v. DePalmo, appellee* 1997, 78 Ohio St.3d 535 [679 N.E.2d 266], 1997 West Law Ohio

---

2. The clarification entry of May 2, 2005, illuminated the trial court's reasoning for the April 15, 2005 holding regarding arrearages as being founded in R.C. 3111.13(F)(2).

3. Actually, Sullivan and O'Connor both filed as appellants unbeknownst to each other. Therefore, two appellate cases were instituted in this court. On June 1, 2005, this court sua sponte consolidated the two appeals. This court also ordered that Sullivan be designated as appellee and cross-appellant.

184, in determining past child support arrearage when the parties made their own agreement."

{¶ 12} Since each assignment of error involves appeals stemming from a decision regarding child support, each assigned error will be reviewed under an abuse-of-discretion standard. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. "[C]ommon sense and fundamental fairness compel the application of the 'abuse of discretion' standard in reviewing matters concerning child support* * *." Id. An abuse of discretion connotes more than a difference in opinion in the application of the law to the facts; it means rather that the trial court's decision was "unreasonable, arbitrary or unconscionable." Id. In order to find error under an abuse-of-discretion standard, the reviewing court must find that there "is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, at 161, 553 N.E.2d 597. Applying this standard to each issue presented for review, we will first address O'Connor's assignments of error.

{¶ 13} O'Connor asserts in his first assignment of error that the trial court should not have included certain retained earnings as income for the purposes of determining child support. As a starting point, R.C. 3119.01(C)(7) defines "gross income" as "the total of all earned and unearned income from all sources during a calendar year* * *." In the underlying action, the trial court imputed income to O'Connor in the following format as it relates to O'Connor's first assignment of error: $4,047 in retained earnings from O'Connor Building Supply Company ("OBS") and $70,751 in income from partnerships and S-corporations in which O'Connor has an interest.

{¶ 14} According to the testimony at trial, O'Connor never actually received either the $4,047 or the $70,751. O'Connor testified that those dollars were classified as "at risk" and remained in the corporate or partnership accounts to help support the companies in the following year. O'Connor further explained that those monetary figures were reflected in his tax returns as a result of an accountant's strategical decision to avoid "double tax somewhere down the road." Other districts have analyzed this issue in regard to whether retained earnings should be considered income for the purposes of determining child support. See *Willman v. Cole*, 4th Dist. Nos. 00CA702 and 00CA707, 2001 WL 674191; *Kotoch v. Kotoch* (July 9, 1998), 8th Dist. No. 72919, 1998 WL 382174; *Riepenhoff v. Riepenhoff* (1990), 64 Ohio App.3d 135, 580 N.E.2d 846.

{¶ 15} Control and intent are two key factors in the retained-earnings analysis. The "dispositive issue is not so much the presence of retained corporate earnings

but the degree of control that the obligor exercises over the decision to distribute those earnings and whether the corporate entity is used as a device to shelter the income from the child support calculation." *Willman* at 10–11, 2001 WL 674191. O'Connor was charged with $4,047 in income from retained earnings as a result of his business interest in OBS. O'Connor is the sole shareholder of OBS, an S-corporation, and, therefore, has exclusive control over the disbursement of the retained earnings.

{¶ 16} The trial court also attributed $70,751 in income to O'Connor from two additional business entities: Sugar Ridge Land Development Corporation ("Sugar Ridge") and O'Connor Allied Fireplace, Ltd. ("Allied"). O'Connor owns a 25 percent interest in Sugar Ridge, an S-corporation. O'Connor owns a 66 percent interest in Allied, a partnership.

{¶ 17} The second prong of the retained earnings/income analysis is the intent of the shareholder. It is axiomatic that there would not have been evidence of an intention to hide income through the business entities of O'Connor here because until March 2004, O'Connor had paid the previously-agreed-upon support without issue. Clearly there was no intention on behalf of O'Connor to reduce his income through the retained-earnings vehicle because presumably he could not foretell the future.

{¶ 18} Our analysis, however, is restricted to our standard of review previously set forth as abuse of discretion. It is undisputed that at all times, O'Connor had access to the retained earnings in OBS. Instead of retrieving the funds, O'Connor chose to leave the money in OBS. That was his decision. It was not the decision of Liam. Child support is to be determined in the best interest of the child, not the best interest of the parent's business. It is apparent from the record that the trial court received the evidence and rendered its decision giving proper weight to the relevant factors. We cannot opine that the trial court's attribution of the $4,047 in retained earnings from OBS, a corporation in which O'Connor as the sole shareholder has complete control, was arbitrary, unreasonable, or unconscionable. Likewise, we cannot hold that the trial court's decision to attribute the $70,751 in income to O'Connor from Sugar Ridge and Allied was in error.

{¶ 19} Even though O'Connor testified that he never received the funds reflected as income on his tax return, that money was nevertheless available to him at his discretion in the case of Allied, or upon petition to the other shareholders in the case of Sugar Ridge. That income reflects funds due and owing to O'Connor and funds that are also readily available. To hold that O'Connor may choose to leave those earnings in a protected vehicle, such as an S-corporation, or a partnership in which he is a majority shareholder, to avoid an attachment of that income for child-support purposes would not be in the best interest of the child. In many instances, a holding as such would encourage

obligors to safeguard those earnings in that vehicle until the child-support obligation is extinguished upon emancipation. This is not acceptable.

{¶ 20} O'Connor's first assignment of error is without merit.

{¶ 21} O'Connor's second assignment of error asserts that the inclusion of depreciation expenses in O'Connor's disposable income for the purposes of child-support calculations was an abuse of discretion by the trial court. Specifically, the trial court included $10,980 in depreciation expenses from OBS and $10,907 in depreciation expenses from Sugar Ridge as gross income to O'Connor.

{¶ 22} R.C. 3119.01 includes self-generated income as gross income for the purposes of child-support calculations and defines such income as "gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses* * *." R.C. 3119.01(C)(13). The same statute defines "ordinary and necessary expenses" as "actual cash items expended by the parent or the parent's business [including] depreciation expenses of business equipment as shown on the books of a business entity." R.C. 3119.01(C)(9)(b), however, excludes "depreciation expenses and other non-cash items that are allowed as deductions on any federal tax return of the parent or the parent's business" as ordinary and necessary expenses.

{¶ 23} The record is sparse regarding explanations for the depreciation expenses taken for both OBS and Sugar Ridge. O'Connor recognized the depreciation expenses for both entities as reflected in his tax return, yet he offered no details on this depreciation. O'Connor failed to convince the trial court that those depreciation expenses should be excluded from his gross income as a result of either an actual cash item or the depreciation of business equipment. In regard to Sugar Ridge at least, O'Connor did not even suggest any conceivable business equipment that could have been replaced in order to qualify for the depreciation exemption. O'Connor explained that the sole function of Sugar Ridge is the ownership of a building. O'Connor stated that Sugar Ridge "did have some depreciable assets I would imagine. Depreciation on the property was $549."

{¶ 24} The trial court failed to recognize any of the depreciation figures in either OBS or Sugar Ridge as ordinary and necessary business expenses when calculating the child-support obligation using the child-support worksheet in accordance with R.C. 3119.022. O'Connor argues that the failure of the trial court to explain why the depreciation expenses were not excluded as "ordinary and necessary business expenses" is error. We disagree.

{¶ 25} There is nothing in the record to provide any inkling as to why the depreciation figures should not be included as part of O'Connor's gross income. By statutory definition, gross income includes "gross receipts" less "ordinary and

necessary business expenses." It is not the duty of the trial court to ferret out those expenses that qualify as ordinary and necessary. Rather, it is the duty of the obligor to assert that certain items are exempt from inclusion as gross income pursuant to this exception. No such evidence was presented. A review of the record reveals that O'Connor could not provide a proper basis for exclusion on any depreciation expense.

{¶ 26} O'Connor argues that case precedent and R.C. 3119.022 and 3119.023 required the trial court to make findings of fact to support its decision to include the depreciation expenses as income. These statutes set forth the child-support computation worksheets to be utilized for sole residential parents and split parental rights respectively. Although these worksheets do provide line deductions for "ordinary and necessary business expenses," the worksheets do not require findings of fact for either the inclusion or exclusion of those expenses.

{¶ 27} O'Connor also mistakenly relies on *Rodgers v. Rohrman* (July 14, 2000), 11th Dist. No. 99–T–0110, 2000 WL 973341, in support of this argument. In *Rodgers*, this court held that the magistrate at the trial-court level erred by ignoring the fact that the obligor incurred depreciation expenses to purchase replacement equipment, a depreciation expense specifically excluded as income pursuant to R.C. 3119.01. In the instant case, there is nothing in the record to suggest that O'Connor purchased replacement equipment reflected in the depreciation figures. In fact, there is nothing in the record to support any reason to exclude the depreciation figures as income. When evidence to support a claim for depreciation expenses is absent from the record, it is not an abuse of discretion for the trial court to disallow those expenses and include them as income. *Wittbrot v. Wittbrot,* 2d Dist. No. 2002 CA 19, 2002-Ohio-6075, 2002 WL 31492282, at ¶ 44; *Foster v. Foster,* 150 Ohio App.3d 298, 2002-Ohio-6390, 780 N.E.2d 1041, at ¶ 23.

{¶ 28} O'Connor's second assignment of error is without merit.

■■■ {¶ 29} O'Connor's third assignment of error alleges that it was improper for the trial court to base its determination of the child-support obligation solely on O'Connor's and Sullivan's 2003 federal income tax returns in lieu of averaging a range of income years. R.C. 3119.05(H) states, "When the court or agency calculates gross income, the court or agency, when appropriate, may average income over a reasonable period of years." The decision regarding when the use of an averaging method is appropriate is left to the sound discretion of the trial court because it is in the best position to weigh the facts and circumstances. See *Cook v. Cook* (Feb. 9, 1996), 11th Dist. No. 95–L–115, 1996 WL 200573, at *2; *Worch v. Worch* (Apr. 14, 2000), 2d Dist. No. 1502, 2000 WL 376643, at *5.

{¶ 30} It appears that the averaging question was contemplated by the trial court. The transcript shows that the trial court questioned O'Connor from the bench on his projected income for 2004.[4] O'Connor advised the court that there had not been any significant changes in either Sugar Ridge or Allied from 2003 to 2004. O'Connor stated, "I don't have the final calculations for 2004, but my guess is it's going to be comparable with 2003 or, you know within—if anything, maybe a five percent drop."

{¶ 31} In reviewing O'Connor's tax returns for the arguable years subject to an averaging method, we cannot say that the trial court's decision against comparing yearly incomes was arbitrary, unreasonable, or unconscionable. The difference in income from 2002 to 2003 is negated by the fact that O'Connor himself testified that his income for 2004 would be similar to that in 2003. Likewise, it would be inappropriate to utilize income earned in 2001 when O'Connor has since gained an additional and profitable business interest in the form of the Allied partnership.

{¶ 32} O'Connor's third assignment of error is without merit

{¶ 33} Sullivan's cross-appeal and single assignment of error states, "The trial court erred in not following *DePalmo, Appellant v. DePalmo, Appellee* 1997, 78 Ohio St.3rd, 535 [679 N.E.2d 266], 1997 West Law Ohio 184, in determining past child support arrearage when the parties made their own agreement."

{¶ 34} Sullivan asserts that *DePalmo* requires a reversal of the trial court's decision because the agreement between the parties did not conform to the child-support guidelines. Sullivan's reliance on *DePalmo* is misplaced in support of this assignment of error. First, it is necessary to note that the trial court followed *DePalmo*. According to *DePalmo*, "[W]hen a trial court either establishes an initial child support order, or modifies an existing child support order based on an agreement under which the custodial parent assumed sole responsibility for the support of the child, the Child Support Guidelines must be followed pursuant to the standard laid out in *Marker v. Grimm.*" *DePalmo v. DePalmo* (1997), 78 Ohio St.3d 535, 538, 679 N.E.2d 266. The child-support guidelines were utilized in the underlying action. The proper worksheets were attached and made a part of the record as required by *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, at syllabus.

{¶ 35} Further, the trial court founded its decision in R.C. 3111.13, which, as properly translated by the trial court, "allows the Court discretion to order support for the period of time from the child's birth until the Court establishes a support order." The trial court exercised that discretion and rendered its

---

4. It is important to note that the 2004 taxable year had been completed at the time of the trial. O'Connor was unable to provide his 2004 tax returns because they had not yet been prepared. O'Connor had requested an extension to file late with the Internal Revenue Service.

decision accordingly. We note, however, that Sullivan did not request child-support arrearages to be recalculated retroactive to the child's birth; rather, Sullivan requested enforcement of the parties' alleged agreement.

{¶ 36} A review of Sullivan's complaint as filed with the trial court supports our analysis. According to the complaint, Sullivan states, "Plaintiff and Defendant, upon the birth of their son, entered into a contract for the payment of child support. The Defendant is in arrears in the payment under that agreement. Plaintiff requests enforcement of the agreement and a calculation of existing arrearages." Sullivan's entire demand for arrearages was founded on the alleged agreement between the parties. The testimony at trial was contradictory regarding whether the parties had an agreement for any terms beyond the $700 per month. Yet the parties agreed that O'Connor had paid $700 per month between Liam's birth and March 2004.

{¶ 37} O'Connor denied that he had agreed to any other terms contained within the alleged agreement. O'Connor testified that the parties were in negotiations through their respective attorneys at the time and that no agreement as to the additional terms was finalized. Apparently the trial court believed O'Connor. "Judgments supported by some competent, credible evidence * * * will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. The trial court in this case is in a better position to consider the evidence as to credibility than this reviewing court. We are not inclined to second guess the decisions of the trier of fact with firsthand knowledge to judge and weigh the evidence in this case with respect to Sullivan's cross-assignment of error.

{¶ 38} Sullivan's single assignment of error is without merit.

{¶ 39} The judgment of the Geauga County Court of Common Pleas is affirmed.

Judgment affirmed.

FORD, P.J., and GRENDELL, J., concur.