OPINION
{¶ 1} Joan C. Hollis appeals from the judgments of the Geauga County Court of Common Pleas, adopting the decision of the magistrate, in her divorce from Daniel R. Winkelman.[1] We affirm.
 {¶ 2} After a marriage of some nineteen years, Ms. Hollis and Mr. Winkelman separated in the fall of 2006. March 13, 2007, Mr. Winkelman filed for divorce. May 2, 2007, Ms. Hollis answered and counterclaimed for divorce. The matter was assigned to *Page 2 
the magistrate, who held hearing October 9 and 10, 2007. By this point, the only issues remaining between the parties related to spousal support and child support. November 14, 2007, the magistrate filed her decision, awarding Ms. Hollis $297.89 per month, plus poundage, in child support for each of the couple's four sons; and, $3,500 per month in spousal support, for a period of sixty months. The magistrate determined the court should not retain jurisdiction to modify the spousal support award, unless Ms. Hollis cohabited or remarried, in which case it would terminate.
 {¶ 3} Ms. Hollis timely objected to the magistrate's decision. By a judgment entry filed March 10, 2008, the trial court overruled the objections, and adopted the decision. However, it remanded the matter back to the magistrate to make certain findings regarding the proposed shared parenting plans of the parties. March 20, 2008, the magistrate filed her decision regarding these issues. April 2, 2008, the trial court adopted the decision of the magistrate regarding the shared parenting plan. April 26, 2008, Ms. Hollis timely noticed this appeal, assigning four errors:
 {¶ 4} "[1.] The trial court erred in determining the husband's income[.][2]
 {¶ 5} "[2.] The court erred in imputing income to the wife[.]
 {¶ 6} "[3.] The court abused its discretion in calculating spousal support for the wife[.]
 {¶ 7} "[4.] The court abused its discretion when it ordered the wife to vacate the marital residence by April 1, 2008[.]"
 {¶ 8} A trial court's judgment regarding whether to adopt, reject, or modify a *Page 3 
magistrate's decision is reviewed for abuse of discretion, In reGochneaur, 11th Dist. No. 2007-A-0089, 2008-Ohio-3987, at ¶ 16; as are its judgments concerning support, whether child or spousal.Haribhakti v. Haribhakti, 11th Dist. No. 2006-P-0067, 2007-Ohio-207, at ¶ 7. "The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * *'" Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Regarding this standard, we recall the term "abuse of discretion" is one of art, essentially connoting judgment exercised by a court which neither comports with reason, nor the record. State v.Ferranto (1925), 112 Ohio St. 667, 676-678.
 {¶ 9} By her first assignment of error, Ms. Hollis contends the magistrate grossly underestimated Mr. Winkelman's income for child support purposes. Mr. Winkelman is self-employed, the owner of D.R. Winkelman Associates, Inc., an S Corporation. He is a computer consultant, whose principal clients are located in Bradenton, Florida. It is his habit to spend three or four days per week in Florida, and return to Ohio for weekends. Mr. Winkelman's travel expenses are considerable, though many are eventually reimbursed by his clients; he has a condominium and car in Florida, as well as a car in Ohio; he pays for his sons' medical insurance, and makes large contributions to a SEP; and, he retains considerable earnings in his business. Altogether, in 2006, Mr. Winkelman's accountant testified that D.R. Winkelman 
Associates had gross earnings of $324,255, following gross earnings of $320,898 in 2005. Mr. Winkelman paid himself $123,000, divided between his salary, a bonus, and imputed income for one of his cars. Out of this money, he gave $9,500 per month to Ms. Hollis to run their *Page 4 
household. Family income taxes were paid by the business.
 {¶ 10} R.C. 3119.01 provides definitions to be used in calculating child support. R.C. 3119.01(C)(13) provides:
 {¶ 11} "`Self-generated income' means gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. `Self-generated income' includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses."
 {¶ 12} In her decision, the magistrate did not accept that Mr. Winkelman's income, for child support purposes, was only $123,000. Specifically, she found that he could reduce his SEP contribution from $30,000 to $20,000. She further found that some of his travel expenses were unsubstantiated, and that he would save on health insurance premiums after the divorce. She also found that his reimbursements on travel expenses from clients needed to be added back into his income; and, that expenses relating to family travel, dinners, gifts, and various household appliances need to be added back. Ultimately, she found his income for child support purposes to be $150,000 — $27,000 more than his claimed income.
 {¶ 13} Ms. Hollis' objections to this conclusion are many and varied. She believes D.R. Winkelman Associates' actual gross receipts in 2006 exceeded $340,000. She believes her ex-husband should only be allowed to contribute $10,000 *Page 5 
to the SEP. She believes a larger portion of his travel expenses should be considered reimbursed. She believes it was wrong for him to purchase or rent his Florida condominium, and his Florida car. She objects that the company pays for the rental home he presently maintains in Ohio. She objects to his retention of funds in his business.
 {¶ 14} Altogether, Ms. Hollis contends Mr. Winkelman's income for child support purposes should be considered between $250,000 and $260,000 per year.
 {¶ 15} Regarding the issue of retained earnings in closely held businesses, this court has determined that control and intent are the two key factors in determining whether they are to be included in child support calculations. Sullivan v. O'Connor, 167 Ohio App.3d 458,2006-Ohio-3206, at ¶ 15. "Control" refers to the obligor's power to either distribute the earnings, or retain them in the business. Id. "Intent" refers to whether there is evidence the obligor is using retained earnings to shelter his or her income from child support obligations. Id.; see, also, Riepenhoff v. Riepenhoff (1990),64 Ohio App.3d 135, 140 (Harsha, J., concurring).
 {¶ 16} In this case, the evidence clearly established that Mr. Winkelman had unfettered discretion over whether to distribute or retain the earnings, thus meeting the first prong of the test. However, there is nothing going to the second prong — i.e., intent. Rather, the evidence established that it was his business practice to retain earnings, not a subterfuge to avoid his child support obligations. Nothing indicates that by retaining earnings in his business, Mr. Winkelman is reducing the funds available to him to support his sons from what he has paid previously. Thus, the magistrate and the trial *Page 6 
court did not abuse their discretion in determining the retained earnings do not form part of his income for child support purposes. Cf.Riepenhoff at 140 (Harsha, J., concurring).
 {¶ 17} On the myriad other issues raised by Ms. Hollis, the magistrate determined that the vast majority of Mr. Winkelman's business expenses were "legitimate, ordinary and necessary business expenses." Such expenses are excluded from the funds available for child support when considering "self-generated income." R.C. 3119.01(C)(13).
 {¶ 18} We are unable to find an abuse of discretion in the magistrate's determination that Mr. Winkelman's income for child support purposes is $150,000.
 {¶ 19} The first assignment of error is without merit.
 {¶ 20} By her second assignment of error, Ms. Hollis argues the magistrate erred in imputing income to her for child support purposes, without making a finding that she is voluntarily underemployed. We disagree.
 {¶ 21} Ms. Hollis is a physical therapist. She ceased working fulltime after the birth of the couple's second son in 1991. At the time of the hearing in this case, Ms. Hollis had been employed for most of the past seven years at the Metzenbaum School in Geauga County, working three days a week during the school year. Her annual income was $30,426, plus an additional $2,446 from private contract work during the summer. The evidence indicates that, working full time, she can make as much as $65,000 per year; and she stated, at trial, that she intends to work full time by the end of the summer of 2009. As noted above, the magistrate imputed Ms. Hollis' income for child support purposes to be $50,000. *Page 7 
 {¶ 22} The magistrate's decision complies with the requirements for calculating imputed income pursuant to R.C. 3119.01(C)(11)(a). It is true that the courts of Ohio require such a finding that a parent is voluntarily unemployed or underemployed before imputing income for child support purposes. See, e.g, Moore v. Moore, 175 Ohio App.3d 1,2008-Ohio-255, at ¶ 62. However, there is no "magic language" requirement in making this finding. In this case, the magistrate's decision recounts: (1) that Ms. Hollis ceased working full time when the couple's second son was born; (2) that she testified she could not work full time during the marriage due to her husband's frequent trips and the necessity of raising four boys; and, (3) what her wages actually are. Implicit in this is the finding that Ms. Hollis is presently voluntarily underemployed.
 {¶ 23} The second assignment of error is without merit.
 {¶ 24} By her third assignment of error, Ms. Hollis contends the magistrate abused her discretion in limiting her spousal support to an award of $3,500 per month for sixty months. Ms. Hollis notes she limited her earning capacity by working part time to raise the couple's sons, and believes the magistrate erred in refusing to grant her $1,800 per month to obtain a higher degree in physical therapy than the one she has presently. She objects to the magistrate's rejection of her estimated monthly expenses of over $12,000. Remarking on Ms. Hollis' testimony that she intends to "downsize," the magistrate determined that monthly expenses in excess of $12,000 were unreasonable, when the Winkelman household was run on $9,500 per month during the pendency of the marriage. Ms. Hollis replies on appeal that her husband's business covered many household expenditures during the marriage. *Page 8 
 {¶ 25} Under the third assignment of error, Ms. Hollis further disputes Mr. Winkelman's alleged monthly expenses of $7,619.30. She contends he could cut these expenses in three principal fashions. First, she argues that he needlessly borrowed $100,000 from his father to help him buy her out of the marital home, which is worth some $425,000. Mr. Winkelman is paying that back at a rate of $1,000 a month. Second, she argues he could use money from an entity named E.J. Wink, LLC to finance the buyout. Mr. Winkelman testified at trial that E.J. Wink, in which he and his siblings have an ownership interest, is an estate planning tool of his parents, and that he is without power to use its assets. Finally, she contends he could reduce his monthly expenses by re-financing the marital home with a thirty year mortgage, rather than the fifteen year mortgage he intended on using.
 {¶ 26} These arguments are unavailing. The magistrate's decision contains a detailed analysis of the R.C. 3105.18(C)(1) factors, which courts must apply in determining awards of spousal support. The magistrate did not abuse her discretion in failing to include an award for obtaining an advanced degree, since Ms. Hollis did not show that she had actually made any serious plans to obtain such a degree. Cf.Franck v. Franck, 3d Dist. No. 10-07-22, 2008-Ohio-624, at ¶ 16. And the magistrate was within her discretion in determining, inter alia, that Mr. Winkelman's proposed monthly expenses were reasonable.
 {¶ 27} The third assignment of error lacks merit.
 {¶ 28} By her fourth assignment of error, Ms. Hollis argues it was unreasonable for the trial court, in its April 2, 2008 judgment entry, to order her to vacate the marital home by April 1, 2008. We disagree. *Page 9 
 {¶ 29} The trial testimony establishes that it was Ms. Hollis' decision that her husband should retain the marital home, which he wished her to have. By her decision of November 14, 2007, the magistrate required Ms. Hollis to vacate the residence by January 1, 2008. The matter was held in abeyance by her filing objections, and the trial court's remand for a decision regarding the shared parenting plans on March 10, 2008. Nevertheless, the trial court otherwise adopted the magistrate's decision by its March 10, 2008 judgment entry. Ms. Hollis was on notice since mid-November that she had to vacate the marital home. It was not an abuse of discretion for the trial court to order her to vacate, four months following the date originally set.
 {¶ 30} The fourth assignment of error lacks merit.
 {¶ 31} The judgment of the Geauga County Court of Common Pleas is affirmed.
 {¶ 32} It is the further order of this court that appellant is assessed costs herein taxed.
 {¶ 33} The court finds there were reasonable grounds for this appeal.
CYNTHIA WESTCOTT RICE, J., MARY JANE TRAPP, J., concur.
[1] Ms. Hollis has adopted her maiden name.
[2] There is a discrepancy between the first assignment of error as set forth in the table of contents of Ms. Hollis' merit brief and assignments of error, and in the body of the brief. We have used the assignment of error as stated in the table of contents. *Page 1