[Cite as *Shendel v. Graham*, 2018-Ohio-2894.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| JULIE SHENDEL, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2017-L-131** |
| GARRY R. GRAHAM, II, | : | |
| Defendant-Appellee. | : | |

Appeal from the Lake County Court of Common Pleas, Juvenile Division, Case No. 2014 CV 01832.

Judgment: Affirmed in part; reversed in part and remanded.

*Hans C. Kuenzi*, Hans C. Kuenzi Co., L.P.A., Skylight Office Tower, 1660 West Second Street, Suite 410, Cleveland, OH 44113 (For Plaintiff-Appellant).

*Jon D. Axelrod* and *Rochelle M. Hellier*, Axelrod Law Office, 36615 Vine Street, Suite 102, Willoughby, OH 44094 (For Defendant-Appellee).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Julie Shendel, appeals the trial court's decision rendered after the case was remanded following her first appeal. She contends the trial court erred in its recalculation of child support and in its directive regarding healthcare for the parties' child. We affirm in part, reverse in part, and remand.

**{¶2}** Julie and appellee, Garry Graham, have one child together. Julie is the residential parent, and Garry resides out of state and has long distance visitation.

**{¶3}** As stated, Julie previously appealed the trial court's decision, and we found several errors warranting reversal and remand. *Shendel v. Graham*, 11th Dist. Lake No. 2016-L-100, 2017-Ohio-4236, 92 N.E.3d 43. On remand, the trial court reassessed Garry's support obligation and made additional findings regarding the parties' healthcare obligations.

**{¶4}** Julie raises ten assignments of error:

**{¶5}** "[1.] The trial court erred in its calculations of appellee's child support obligation for 2011 and child support arrearage for the year by misstating his gross income.

**{¶6}** "[2.] The trial court erred in its calculations of appellee's child support obligation for 2012 and child support arrearage for the year by misstating his gross income.

**{¶7}** "[3.] The trial court erred in its calculations of appellee's child support obligation for 2013 and child support arrearage for the year by misstating his gross income.

**{¶8}** "[4.] The trial court erred in its calculations of appellee's child support obligation for 2013 and child support arrearage for the year by failing to consider all of appellant's child care expenses.

**{¶9}** "[5.] The trial court erred in its calculations of appellee's child support obligation in 2014 and child support arrearage for the year by understating his gross income.

2

{¶10} "[6.] The trial court erred in its calculations of appellee's child support obligation for 2014 and child support arrearage for the year by failing to consider all of appellant's child care expenses.

{¶11} "[7.] The trial court erred in its calculations of appellee's child support obligation for 2015 and child support arrearage for the year by misstating his gross income.

{¶12} "[8.] The trial court erred in its calculations of appellee's child support obligation in 2015 and child support arrearage for the year by failing to consider all of appellant's child care expenses.

{¶13} "[9.] The trial court erred in its calculations of appellee's child support obligation in 2016 and child support arrearage for the year by failing to consider all of appellant's child care expenses.

{¶14} "[10.] The trial court erred in failing to order appellee to provide healthcare insurance coverage for the minor child without qualification."

{¶15} Julie's first nine assigned errors challenge the trial court's calculations following remand. We generally review child support determinations for an abuse of discretion, but upon considering challenges to the factual basis for a trial court's decision, we must uphold the decision if it is supported by some competent credible evidence. *Shendel, supra* at ¶14; *Massey v. Lambert*, 7th Dist. Columbiana No. 09 CO 29, 2011-Ohio-1341, ¶48. Appellate courts give deference to the trial court's findings because it is in the best position to weigh the credibility of the proffered testimony. *Jenkins v. Eagle Tp. Trustees,* 4th Dist. Vinton No. 01CA557, 2002-Ohio-2154, *4, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

{¶16} Julie's first assignment challenges the trial court's calculation of Garry's 2011 child support obligation. She claims the court understated his 2011 income by $20,562 because it reduced the gross proceeds from the sale of his business property based on his stated cost bases for the items, which reduced his federal taxes on this income. For example, his sale of business property form 4797 reflects he sold a corral for $900 but added the depreciation taken since the item's acquisition in the amount of $1,864 and then reduced this amount by $2,933, which is the stated cost for the corral along with improvement costs to the corral. Thus, he reported a $169 loss for the corral in 2011, and this loss was then used to reduce his reported gains for that year. This is the same for the other business property items sold in 2011. Collectively, Julie claims his 2011 income for child support purposes should have been $97,398, not $76,836, based on the trial court's use of the amount after allowable deductions.

{¶17} Without explicitly stating so, Julie appears to rely on our prior decision in which we held in part that "R.C. 3119.01(C)(9)(b) specifically excludes 'depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business' as ordinary and necessary expenses that reduce a parent's gross receipts for child support purposes. *Hale v. Hale*, 11th Dist. Lake Nos. 2005-L-101 & 2005-L-114, 2006-Ohio-5164, 2006 WL 2796261, ¶22–23; *In re Sullivan,* 167 Ohio.App.3d 458, 2006-Ohio-3206, 855 N.E.2d 554, ¶ 21 (11th Dist.).

{¶18} "The exclusion of depreciation expenses and noncash deductions 'is designed to ensure that a parent's gross income is not reduced by any sum that was not actually expended in the year used for computing child support.' *Baus v. Baus*, 72 Ohio App.3d 781, 784, 596 N.E.2d 509 (9th Dist. 1991)." *Shendel*, *supra*, at ¶19-20.

4

{¶19} As alleged, there was no testimony at the June 2016 trial regarding the sale of these business items, and Julie did not raise this issue in her prior appeal. However, because the trial court had not previously provided a breakdown as to how it determined Garry's income for each year, it is not evident whether the trial court previously included these amounts in Garry's income.

{¶20} "'Gross income' means, except as excluded in division (C)(7) of this section, the total of all earned and unearned income from all sources during a calendar year, *whether or not the income is taxable*, and includes income from salaries, wages, overtime pay, and bonuses * * *." (Emphasis added.) R.C. 3119.01(C)(7).

{¶21} However, gross income does not include "[n]onrecurring or unsustainable income or cash flow items * * *." R.C. 3119.01(C)(7)(e). "'Nonrecurring or unsustainable income or cash flow item' means an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." R.C. 3119.01(C)(8).

{¶22} Here, there is nothing evidencing that Garry's sale of this business property was something he earned on a regular basis. There are no comparable sales of business equipment or property on his other tax returns in evidence. Thus, this one-time gain from the sale of cattle equipment is not recurring income and does not constitute gross income. R.C. 3119.01(C)(7)(e); *Leffel v. Leffel*, 2d Dist. Clark No. 2000-CA-78, *5 2001 WL 664423 (June 15, 2001) (holding that a one-time sale not in the father's ordinary course of business is nonrecurring income); *Conrad v. Conrad,* 7th Dist. Mahoning No. 06-MA-128, 2007-Ohio-3186, ¶28. Thus, the trial court's inclusion of this amount, albeit reduced without corresponding evidence, was to Julie's benefit.

{¶23} Accordingly, her first assignment lacks merit.

{¶24} Julie's second assignment is closely aligned with her first. Here she claims the trial court misstated Garry's 2012 gross income for child support purposes by failing to include the gross proceeds he received for the sale of land, i.e., $3,256 as stated on schedule D of his 2012 federal tax return. Instead, she claims the trial court erroneously included only a portion of this amount. *Shendel*, *supra*, at ¶18-20, citing *Baus*, 72 Ohio App.3d 781, 784, 596 N.E.2d 509 (9th Dist. 1991).

{¶25} Notwithstanding, and as explained in Julie's first assigned error, we find no reversible error because this one-time sale of real property was neither recurring nor sustainable income. R.C. 3119.01(C)(8). There is no evidence that Garry was in the business of buying and selling real estate, and there are no comparable sales of real estate reflected in his other four years of tax returns in evidence. Thus, no portion of this income, reduced or otherwise, was properly included in his 2012 gross income. R.C. 3119.01(C)(7). Notwithstanding, Julie benefits from the inclusion and has therefore not been prejudiced.

{¶26} Julie's second assignment is overruled.

{¶27} Julie's third argument contends the trial court understated Garry's 2013 income for child support purposes based on its failure to include his $1,829 distribution from his pension or annuity in his 2013 gross income. We addressed a comparable issue in Shendel's prior appeal and disagreed explaining, "[p]ursuant to the exception in R.C. 3119.01(C)(7)(e), the trial court did not abuse its discretion in excluding Garry's one-time withdrawal from his retirement accounts that he used to pay off a designated debt since the same is specifically excluded as gross income under the statute. It was

6

neither recurring nor sustainable income." *Shende supra,* ¶36. Here, there is nothing evidencing that this distribution was recurring as it is not reflected on the years before and after 2013. The only other pension or annuity income on his tax returns on line 16a of his 1040 is $174 listed in 2015.

**{¶28}** Thus, we find no abuse of discretion in its failure to include this amount in his gross income, and her third assignment lacks merit.

**{¶29}** Julie's fourth assignment asserts the trial court erred in its calculation of Garry's 2013 child support obligation by failing to include all of Julie's child care expenses for that year. She contends the trial court understated her child care expenses by $40.

**{¶30}** We addressed her 2013 childcare expenses in our prior appeal and found error:

**{¶31}** "Julie challenges the trial court's failure to include all of her childcare expenses for 2013 in its child support calculations. She avers she spent $7,760 in 2013. However, the trial court's child support worksheet indicates that Julie incurred $7,515 in childcare expenses for 2013. Garry did not object to this expense, and there is no calculation or breakdown in the court or magistrate's decision explaining its determination.

**{¶32}** "Julie submitted a receipt from Little Scholars in support of her testimony indicating their son's weekly rates incurred, activity fees, and payments made from 2013 through 2015. His weekly rates fluctuated from $175 as a toddler to $155 as a preschool-aged child. Although the trial court included an amount close to what Julie paid in 2013, we cannot ascertain the basis for its $7,515 determination to conclude that

7

it is supported by competent, credible evidence.  Accordingly, this assigned error has merit since the trial court's $7,515 figure is not supported by competent, credible evidence." *Shendel, supra,* at ¶57-58.

{¶33} On remand, the trial court did not hold another hearing or consider additional evidence.  Its recalculation of Garry's support obligation for 2013 includes the following recalculation of childcare expenses:

| | |
|---|---|
| "29 weeks at $175.00 per week | $5,075.00 |
| "19 weeks at $155.00 per week | $2,945.00 |
| "Registration Fee | 25.00 |
| "Activity Fee | 25.00 |
| "Less vacation credit | -  350.00 |
| "Little Scholars Total | $7,720.00" |

{¶34}  Julie testified at the trial that the weekly rates varied from $175 to $155 per week based on the age of the child and due to price increases.  She confirmed that exhibit 15 shows all the amounts she paid for their child to attend Little Scholars beginning in February of 2013 through August of 2015.  Exhibit 15 confirms the numbers used by the court in calculating Julie's 2013 childcare expenses on remand.  Thus, the trial court's calculations are supported by competent credible evidence, and Julie's fourth assigned error lacks merit.

{¶35} Her fifth assignment contends error in the trial court's calculation of Garry's 2014 gross income based on his failure to produce his W-2 for that year.  Julie claims his Missouri state return shows employment income in the amount of $58,668

plus his schedule E income in the amount of $12,169, which equals $70,837. Thus, she claims it understated his income by $12,615 for 2014.

**{¶36}** However, Garry testified that his gross income for 2014 was $46,053, which the trial court added to the $12,169 schedule E income to equal the figure it used, i.e., $58,222.

**{¶37}** As Julie argues, a review of Garry's state tax return for 2014 shows that his gross employment income was $58,668, not $46,053 as he testified. Thus, she claims the trial court erred in using his federal adjusted gross income figure, i.e., $46,053. We agree. In our prior decision, we addressed Garry's income for 2014 and found the figures used by the trial court were supported by competent, credible evidence except to the extent that the court allowed unverified business expenses to reduce his self-generated income. *Shendel, supra*, at ¶64. On remand the magistrate nevertheless used Garry's adjusted gross income as the starting point, which was reduced by his unverified business expenses and other tax deductions that do not reduce one's "gross income" for child support purposes. R.C. 3119.01(C)(7).

**{¶38}** "For purposes of child support, the 'income' of a parent employed to full capacity is 'the gross income of the parent.' R.C. 3119.01(C)(5). A parent's 'gross income' is 'the total of all earned and unearned income from all sources during a calendar year, *whether or not the income is taxable,* and includes income from salaries, wages, * * * [and] commissions; royalties; tips; rents; dividends; * * * interest; trust income; annuities; social security benefits, * * * spousal support actually received; and all other sources of income.' R.C. 3119.01(C)(7)." (Emphasis added.) *Wolf-Sabatino v. Sabatino,* 10th Dist. Franklin No. 10AP-1161, 2011-Ohio-6819, ¶90.

9

**{¶39}** Thus, gross income for calculating child support is not the same as a parent's federal adjusted income, which is defined as "gross income minus allowable deductions specified in the tax code." *Black's Law Dictionary* (10th ed. 2014).

**{¶40}** Garry's Missouri long form individual tax return reflects that his 2014 federal adjusted income was $46,053. This is consistent with his testimony. However, his Missouri gross income split worksheet confirms that his actual wages, salaries, and tips for 2014 listed on line seven totals $58,668, before he took the allowable federal tax deductions, including business losses and a student loan interest deduction. Accordingly, the trial court erred as a matter of law in using his federal adjusted income in calculating his child support obligation for 2014. R.C. 3119.01(C)(5). The competent credible evidence establishes that his 2014 employment income was $58,668. This amount plus the $12,169 listed as supplemental income from schedule E, which no one challenges, constitutes gross income of $70,837.

**{¶41}** Thus, Julie's fifth assigned error has merit.

**{¶42}** Julie's sixth argument claims the trial court erred in calculating Garry's 2014 child support obligation because it failed to include all of her childcare expenses for that year. She claims its figure is short by $330 and that the number the trial court used is not supported by competent credible evidence.

**{¶43}** We discussed this precise issue in our prior opinion and held:

**{¶44}** "Julie challenges the trial court's figure it used for her 2014 childcare expenses. She testified that she paid for her son to attend Little Scholars and confirmed that the statement she provided, exhibit 15, reflects the rates she paid, including registration and activity fees. Her Little Scholar statement confirms she paid a

10

total of $8,505 in 2014. The court used $7,865 for her 2014 childcare expenses on its worksheet. Because we cannot ascertain the basis for the trial court's calculation based on the evidence, this assigned error has merit." *Shendel v. Graham,* 11th Dist. Lake No. 2016-L-100, 2017-Ohio-4236, 92 N.E.3d 43, ¶67.

**{¶45}** On remand the trial court set forth its calculations in detail and included $8,175.00 for Julie's 2014 childcare expenses:

| | |
|---|---|
| "Little Scholars, 52 weeks at $155.00 per week | $8,060.00 |
| "Summer Fee | 40.00 |
| "Registration Fees | 75.00 |
| "Total 2014 Child Care Costs | $8,175.00" |

**{¶46}** The trial court's calculation following remand is consistent with the competent credible evidence presented at trial. Thus, her sixth assignment is overruled.

**{¶47}** Julie's seventh assignment asserts the trial court understated Garry's income for 2015 for child support purposes. She claims the court ignored the amount he received from his pension or annuity account in the amount of $174, as listed on line 16A of his federal tax return, and thus understated his income by this amount.

**{¶48}** Garry counters arguing this amount was nonrecurring income. Because there was no testimony as to whether this annuity payment was recurring and no comparable payments are listed in his other tax returns, we find no abuse of discretion in the trial court's decision to not include it. R.C. 3119.01(C)(8). Thus, Julie's seventh assigned error lacks merit.

**{¶49}** Her eighth assigned error contends the trial court miscalculated her childcare expenses for 2015 because the figures listed for her expenses do not equal

11

the total amount stated by the trial court. As she claims, the trial court details her childcare expenses in 2015 as:

| | |
|---|---|
| "Little Scholars, 21 weeks at $155.00 per week | $3,255.00 |
| "13 weeks at $165.00 per week | 2,145.00 |
| "Summer Fee | 100.00 |
| "Registration Fee | 35.00 |
| "Subtotal | $5,535.00 |
| "Willo-Christian, Half Tuition, Fall Semester | 2,686.00 |
| "Fees | 330.00 |
| "Total 2014 Child Care Costs | $8,221.00" |

**{¶50}** However, in adding the listed expenses, the trial court apparently failed to include the $330 fees for Willo-Christian. Thus, the trial court's total for appellant's childcare costs in 2015 was $330 short. Julie's eighth assignment has merit.

**{¶51}** Julie's ninth assigned error claims error based on the trial court's alleged failure to include all of her childcare expenses for 2016. She claims it understated her expenses by $2,494 and as such, recalculation of Garry's child support obligation for that year is required. We addressed this issue in our prior decision:

**{¶52}** "She claims the court erred in calculating her childcare expenses for 2016. Julie testified that their son will attend Willo-Hill in 2016 during the school year and the day camp at the local YMCA during the summer. The associated costs are $4,712 for Willo-Hill plus $330 in fees for a total of $5,042. Her cost for the day camp is $126 per week, $25 per week for after care, and $20 per month to be a member of the YMCA. She did not testify to the precise number of weeks that the child would attend.

12

Notwithstanding, assuming he only spent two total months or eight weeks at the YMCA, then Julie's costs were $1,648. Together, the two cost $6,690.

**{¶53}** "Again, Garry did not challenge her claimed expenses for these providers, but the trial court included only $3,661 as her childcare expenses for 2016 without explanation. This figure does not comport with the evidence, and as such, Julie's thirteenth assigned error has merit." *Shendel, supra*, at ¶83-84.

**{¶54}** On remand, the trial court explained its decision stating:

**{¶55}** "Mother testified that the child would be enrolled in kindergarten as of the fall of 2016. Mother testified that any costs for tuition for the fall of 2016 would be for private school tuition for kindergarten. Private school tuition in lieu of free public school is not equivalent to day care costs for a preschool child. Absent an agreement by Father to pay for private school tuition such costs should not be included as child care costs. Therefore, the Magistrate finds that any fall tuition costs for 2016 should not be included as child care costs for 2016."

**{¶56}** The testimony on this issue is consistent with the trial court's finding on remand. Julie testified that she was sending the parties' child to private kindergarten, not public school. And in discussing their child's extracurricular activities, Garry testified that he will be happy to share in the costs associated with their son's activities, but would like the right to agree with each, including whether their son attends private school before Garry will agree to share the cost.

**{¶57}** Thus, we find no error because the decision is supported by the evidence. Julie's ninth assigned error lacks merit.

**{¶58}** Julie's final assignment asserts the trial court erred in ordering the parties to be personally responsible for their child's healthcare expenses if either party uses a healthcare provider not "authorized" by the applicable health insurance unless they agree in advance to share the costs.

**{¶59}** We review this issue for an abuse of discretion and reverse only if the trial court failed to exercise sound, reasonable decision-making that does not comport with reason or the record. *Taylor v. Taylor*, 11th Dist. Trumbull No. 2015-T-0110, 2017-Ohio-2594, ¶12-13 citing *State v. Underwood,* 11th Dist. No. 2008-L-113, 2009-Ohio-2089, 2009 WL 1177050.

**{¶60}** In her prior appeal, Julie argued in her fifteenth assigned error that the trial court erred in failing to allocate responsibility for payment of uninsured and unreimbursed health care expenses for the minor child. We agreed and found error:

**{¶61}** "As Julie avers, R.C. 3119.32 *Contents of support order* requires a court to determine which parent or both are responsible for the child's out-of-pocket medical expenses. It states:

**{¶62}** "'A child support order shall contain all of the following:

**{¶63}** "'* * *

**{¶64}** "'(D) A requirement that the obligor, the obligee, or both of them under a formula established by the court, with respect to a court child support order, or the child support enforcement agency, with respect to an administrative child support order, *pay co-payment or deductible costs required under the private health insurance policy, contract, or plan that covers the children * * *.*'" (Emphasis added.) *Id.*

14

**{¶65}** "As Julie contends, the trial court's order does not provide for the division of the child's unreimbursed and out-of-pocket medical expenses and co-pays. Pursuant to R.C. 3119.32(D), a statement to this effect is mandatory. Thus, the trial court erred. On remand, the trial court must render an order consistent with the requirements of R.C. 3119.32." *Shendel*, *supra*, at ¶100-104.

**{¶66}** Following remand, the trial court adopted the magistrate's decision in full, which holds:

**{¶67}** "All extraordinary medical expenses which are defined to be all unreimbursed medical expenses, deductibles and co-payments or expenses not covered by insurance shall be shared by the parties pursuant to the following percentages: the father shall pay 58 percent and mother shall pay 42 percent.

**{¶68}** "Should the custodian, custodial parent, or caretaker elect to use a health care provider other than those authorized by the health insurance company provided, they shall be responsible to pay any unreimbursed costs associated with said service unless, there is an agreement in advance, to pay for the cost of said service."

**{¶69}** Here, it appears the trial court's reference to "authorized" providers is an effort to incentivize the parties to maximize the child's applicable insurance. Depending on the type of applicable healthcare plan, this provision may never apply. For example, if Garry maintains a preferred provider organization plan or PPO and Julie takes their child to an out-of-network hospital, the PPO plan still usually pays the provider, but at a different rate of reimbursement and a higher deductible may apply. If this situation arises, then the parties would be responsible for the uncovered amount and deductibles pursuant to their respective shares of income as stated by the trial court.

15

**{¶70}** However, if Garry has an HMO or health maintenance organization, and Julie takes the child to an out-of-network provider, then there may be no coverage at all. If this situation is applicable, then Julie would be solely responsible for the "unauthorized" costs absent an agreement between the parties.

**{¶71}** Further, and contrary to Julie's argument, the statute "does not require that such expenses be divided in accordance with parents' percentages of income as set forth on the child support worksheet. Instead, the statute, by the use of the word 'may,' allows a trial court discretion to consider the allocation of the expenses when adjusting a child support order." *Hutchinson v. Hutchinson*, 2d Dist. Greene No. 97-CA-40, 1998 WL 271850, *8 (May 29, 1998). Thus, the trial court's partial allocation of responsibility for "unauthorized" providers not in accord with the parents' percentages of income is not an abuse of discretion. Accordingly, Julie's tenth assigned error lacks merit and is overruled.

**{¶72}** In summary, we find Julie's fifth and eighth assigned errors have merit. The trial court's decision is affirmed in part, reversed in part, and remanded.

CYNTHIA WESTCOTT RICE, J.,

TIMOTHY P. CANNON, J.,

concur.