[Cite as *Shendel v. Graham*, 2017-Ohio-4236.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| JULIE SHENDEL, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| | | **CASE NO. 2016-L-100** |
| - vs - | : | |
| GARRY R. GRAHAM, II, | : | |
| Defendant-Appellee. | : | |

Appeal from the Lake County Court of Common Pleas, Juvenile Division, Case No. 2014 CV 01832.

Judgment: Affirmed in part; reversed in part and remanded.

*Hans C. Kuenzi*, Hans C. Kuenzi Co., LPA, Skylight Office Tower, 1660 West Second Street, Suite 660, Cleveland, OH 44113-1419 (For Plaintiff-Appellant).

*Jon D. Axelrod*, Axelrod Law Office, 36615 Vine Street, Suite 102, Willoughby, OH 44094 (For Defendant-Appellee).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Julie Shendel, appeals the trial court's decision adopting the magistrate's decision following a hearing on several issues involving the parties' minor son.

{¶2}   Shendel and appellee, Gary R. Graham, II, were never married, but dated for a few years.  They had one child.  The parties lived together in Tennessee at the time of the child's birth in August 2010, but Garry moved to North Carolina the following spring when their child was an infant.  Julie and the child continued to reside in Tennessee until she relocated to Lake County, Ohio to attend nursing school in 2012.

{¶3}   Prior to the hearing, the parties agreed that Julie would remain the custodial parent and that Garry would enjoy long distance visitation since he lives in Illinois.

{¶4}   The issues to be addressed at the hearing included Julie's request for child support retroactive to the child's birth and Garry's request that Julie share equally in the transportation costs associated with his long distance visitation.  The magistrate also noted that tax exemption issues and health insurance obligations remained.

{¶5}   Appellant asserts eighteen assigned errors.  Her first assigned error avers:

{¶6}   "The trial court erred in its allocation of transportation costs incurred by appellee to exercise visitation with the minor child."

{¶7}   Pursuant to R.C. 3109.12(B), a trial court is vested with discretion to make reasonable orders with respect to parental visitation issues.  *Appleby v. Appleby*, 24 Ohio St.3d 39, 41, 492 N.E.2d 831 (1986).  In exercising this discretion, the court is required to consider the best interest of the child and the sixteen factors in division (D) of section 3109.051 of the Revised Code.  R.C. 3109.12; *Harbottle v. Harbottle*, 9th Dist. Summit No. 20897, 2002-Ohio-4859, ¶93.

{¶8}   We review a trial court's visitation decisions for an abuse of discretion.

**{¶9}** "'[T]he term "abuse of discretion" is one of art, connoting judgment exercised by a court, which does not comport with reason or the record.' *State v. Underwood,* 11th Dist. No. 2008–L–113, 2009-Ohio-2089, 2009 WL 1177050, ¶ 30, citing *State v. Ferranto,* 112 Ohio St. 667, 676–678, 148 N.E. 362 (1925). * * * [A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.' *State v. Beechler,* 2d Dist. No. 09–CA–54, 2010-Ohio-1900, 2010 WL 1731784, ¶ 62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11. When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.' *Id.* at ¶ 67." *Ivancic v. Enos*, 11th Dist. Lake No. 2011-L-050, 2012-Ohio-3639, 978 N.E.2d 927, ¶70.

**{¶10}** The trial court's order on this issue states: "Ms. Shendell shall bear 25% of the travel expenses. Mr. Graham shall pay all travel expenses and shall receive a deviation on past and future support. The yearly deviation for travel expenses is $735.00."

**{¶11}** Julie contends the trial court erred in imposing 25 percent of Garry's costs associated with visitation because Garry was the parent who initially moved away from the child, and as such, he should bear the costs associated with long distance visitation. Contrary to Julie's argument, however, which parent initially moved away from the child is not determinative.

3

**{¶12}** Further, Garry remains responsible for 75 percent of his visitation costs, and he testified in detail about the cost of each visit that includes an 11-hour drive each way from Quincy, Illinois to Eastlake, Ohio, and a one-night stay at a hotel when the child is with him on his return trip to Illinois. Julie fails to direct our attention to anything evidencing that the trial court's imposition of part of the costs associated with Garry's visitation constitutes an abuse of discretion. Her first assignment of error lacks merit.

**{¶13}** Julie's second through thirteenth assigned errors challenge the trial court's calculation and determination of Garry's support obligation and arrearage.

**{¶14}** Our standard of review for child support determinations is abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989); *Beiers v. Phillips*, 5th Licking Dist. No. 08CA0127, 2009-Ohio-3278, ¶15. "However, 'challenges to factual determinations upon which the child support order is based are reviewed using the 'some competent credible evidence' standard.'" (Citations omitted.) *Massey v. Lambert*, 7th Dist. Columbiana No. 09-CO-29, 2011-Ohio-1341, ¶48.

**{¶15}** Julie's second assigned error claims:

**{¶16}** "The trial court erred in its calculation of appellee's child support obligations for 2011 and each year thereafter by giving consideration to his alleged business expenses."

**{¶17}** Julie argues the trial court erred as a matter of law by finding that Garry's business expense deductions reduced his income for child support purposes in 2011 and every year thereafter because Garry did not provide any evidence establishing his business deductions were of the type permitted as reducing a parent's income for child support purposes or that the expenses were actually incurred in the year claimed.

4

**{¶18}** A parent's gross income for child support calculations includes self-generated income. R.C. 3119.01. R.C. 3119.01(C)(13) provides in part that "'self-generated income' means gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents ***minus ordinary and necessary expenses incurred by the parent in generating the gross receipts***."

**{¶19}** Further "ordinary and necessary" expenses "means actual cash items expended by the parent or the parent's business and includes depreciation expenses of business equipment as shown on the books of a business entity." R.C. 3119.01(C)(9)(a). However, R.C. 3119.01(C)(9)(b) specifically excludes "depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business" as ordinary and necessary expenses that reduce a parent's gross receipts for child support purposes. *Hale v. Hale*, 11th Dist. Lake Nos. 2005-L-101 & 2005-L-114, 2006-Ohio-5164, ¶22-23; *In re Sullivan,* Ohio App.3d 458, 2006-Ohio-3206, 855 N.E.2d 554, ¶21 (11th Dist.).

**{¶20}** The exclusion of depreciation expenses and noncash deductions "is designed to ensure that a parent's gross income is not reduced by any sum that was not actually expended in the year used for computing child support." *Baus v. Baus*, 72 Ohio App.3d 781, 784, 596 N.E.2d 509 (9th Dist.1991).

**{¶21}** We have twice before considered comparable cases addressing this issue. In *Hale*, the obligor father claimed the trial court erred because it failed to reduce his gross income earned from rental income based on his business expenses. In *In re Sullivan*, 167 Ohio App.3d 458, 2006-Ohio-3206, 855 N.E.2d 554 ¶21 (11th Dist.), the

obligor argued that the trial court erred by including more than $20,000 in depreciation expenses in his income for child support purposes. We found no error in either.

**{¶22}** Further, we held in *Sullivan* that "it is not the duty of the trial court to ferret out those expenses that qualify as ordinary and necessary. Rather, it is the duty of the obligor to assert that certain items are exempt from inclusion as gross income pursuant to this exception." And because no evidence was presented establishing the basis for the claimed deductions in *Sullivan*, we found no abuse of discretion in the trial court's decision not to reduce the obligor's income based on the claimed deductions. *Id*. at ¶25-27; *Wittbrot v. Wittbrot,* 2d Dist. Clark No. 2002 CA 19, 2002–Ohio–6075, at ¶44 (ruling that a trial court did not abuse its discretion in refusing to allow deduction for depreciation where there was no evidence of business expenses other than obligor's bald assertion as to the amount of the expenses.); *Janecek v. Marshall*, 11th Dist. Lake No. 2010-L-059, 2011-Ohio-2994, ¶19.

**{¶23}** In *Foster v. Foster*, 150 Ohio App.3d 298, 2002-Ohio-6390, 780 N.E.2d 1041, the Twelfth District Court of Appeals held that "absent evidence that the depreciation deduction represents actual cash expenses incurred in the year that the deduction was taken, R.C. 3119.01(C)(9) mandates that the depreciation deduction be included in the parent's gross income for that year." *Id*. at ¶23; *Cunningham v. Cunningham*, 3d Dist. Paulding No. 11-13-08, 2014-Ohio-1684, ¶24-25 (finding that depreciation expenses carried forward from a previous year are not cash expenses for that year for child support purposes.)

**{¶24}** Pursuant to *Foster*, and our holdings in *Hale* and *Sullivan,* Julie avers that the trial court abused its discretion by reducing Garry's self-generated income based on

6

*any* of his reasonable and necessary business expenses because he carried the burden of proof. We agree that Garry, as the obligor, had to come forward with some evidence that he actually paid for the expense in the year it was claimed and that the expense was necessary and ordinary. He provided none.

**{¶25}** Garry submitted his tax returns to establish his income for the years in issue, i.e. 2011 through 2015. He did not, however, provide any corresponding testimony or evidence as to his alleged necessary and ordinary business expenses that he paid that were listed on his returns as associated with his self-generated income during any years in question.

**{¶26}** While the magistrate expressly agreed that Garry's income should not be reduced by his depreciation expenses, it nevertheless allowed Garry's other business expenses identified on his returns to reduce his income without any evidence that the same were ordinary, necessary, or were actual cash expenditures made in the year claimed. Thus, the trial court erred to the extent that it reduced Garry's income based on any of his business expenses since he failed to satisfy his burden of proof. Accordingly, Julie's second assigned error has merit.

**{¶27}** Appellant's third assigned error claims:

**{¶28}** "The trial court erred in its calculations of appellee's child support obligation for 2011 and child support arrearage for the year by misstating his gross income."

**{¶29}** Julie's argument here is twofold. First, she claims the court should have included Garry's $32,930 in income received from the liquidation of his retirement benefit as income. And, assuming we disagree with her first argument, Julie also claims

7

the court's calculation of Garry's 2011 income nevertheless was still understated by $4,000.

{¶30} Julie relies on R.C. 3119.01(C)(7) in claiming that Gary's withdrawal should have been included in his 2011 income since "gross income" includes "the total of all earned and unearned income from all sources during a calendar year * * *, and includes income from salaries, wages, overtime pay, and bonuses * * * ; pensions; interest; trust income; annuities * * *."

{¶31} Gary testified that he had $32,930 in pension and annuity income in 2011. He withdrew the money to pay off his farm debt.

{¶32} R.C. 3119.01(C)(7) also provides in part:

{¶33} "'Gross income' does not include * * *:

{¶34} "* * *

{¶35} "(e) Nonrecurring or unsustainable income or cash flow items * * *."

{¶36} The magistrate found, and the trial court agreed, that Gary's lump sum $32,930 withdrawal from his annuity and retirement accounts used to pay off a debt was not included as income because it was not recurring. Pursuant to the exception in R.C. 3119.01(C)(7)(e), the trial court did not abuse its discretion in excluding Gary's one-time withdrawal from his retirement accounts that he used to pay off a designated debt since the same is specifically excluded as gross income under the statute. It was neither recurring nor sustainable income. Thus this argument lacks merit.

{¶37} Regardless of this lump sum withdrawal, Julie avers that the trial court still understated Gary's 2011 income by $4,000. We agree. The trial court's child support worksheet states Garry's 2011 gross income as $35,166. However, based on its

8

inclusion of Garry's depreciation expenses as income, his income was $39,166 since $62,069 minus his lump sum $32,930 equals $29,139. And $29,139 plus his depreciation expenses of $1,743 and $8,284 equals $39,166. Thus, its gross income calculation was short by $4,000 and is not supported by competent, credible evidence.

{¶38} In addition to this miscalculation, Garry's gross income must also be recalculated in light of the trial court's erroneous inclusion of his business expenses as reducing his self-generated income as stated under the second assigned error.

{¶39} Accordingly, Julie's third assignment of error has merit.

{¶40} Appellant's fourth assigned error claims: "The trial court erred in its calculations of appellee's child support obligation for 2011 and child support arrearage for the year by failing to consider appellant's child care expenses."

{¶41} Under R.C. Chapter 3119 and *Marker v Grimm,* 65 Ohio St.3d 139, 601 N.E.2d 496 (1992), syllabus, a trial court must complete a child support worksheet when making a child support determination. This requirement is mandatory in order to enable meaningful appellate review. *Varner v. Varner*, 170 Ohio App.3d 448, 2007-Ohio-675, 867 N.E.2d 857, ¶8 (9th Dist.)

{¶42} "'When calculating child support, a trial court has discretion to determine what amount of child-care expenses should be included on a child-support worksheet.' *Qi v. Yang,* 2d Dist. Greene No. 2012–CA–24, 2012-Ohio-5542, 2012 WL 5989711, ¶ 23, citing *Johnson v. McConnell,* 2d Dist. Montgomery No. 24115, 2010-Ohio-5900, 2010 WL 4925785, ¶ 23. All claimed daycare expenses are not automatically included in the calculation; instead, the court has discretion to decide an appropriate amount. *Id.* We have stressed that the party who claims childcare expenses has the burden of

9

showing 'how and why the expenses she claimed are reasonable.' *Daufel v. Daufel,* 2d Dist. Montgomery No. 22584, 2008-Ohio-3868, 2008 WL 2942220, ¶ 38." *Mossing-Landers v. Landers*, 2d Dist. Montgomery No. 27031, 2016-Ohio-7625.

**{¶43}** Here, Julie takes issue with the court's failure to include her child care expenses for 2011 in the parties' child support worksheet. As she avers, she testified that she paid an individual $100 per week for as-needed babysitting services in her home while attending college in Tennessee. Julie presented an email from her sitter confirming that she paid her a total of $100 per week from April 2011 to December 2012.

**{¶44}** Garry did not present any evidence to the contrary, but he did object to the admissibility of Julie's email "receipt" from her sitter, which the court sustained. Thus, Garry claims the trial court evidently disregarded Julie's claimed expense as lacking credibility. In light of its decision excluding the email exhibit and its failure to include any childcare expenses on the worksheet, we agree the trial court evidently found her $100 per week babysitting expense was either unreasonable or lacking in credibility. Thus, we see no abuse of discretion, and this assigned error is overruled.

**{¶45}** Appellant's fifth alleged error asserts:

**{¶46}** "The trial court erred in its calculation of appellee's child support arrearage in 2011."

**{¶47}** Julie avers the court erred in determining Garry's support obligation for 2011 and that it should have found he was responsible for nine months of that year, not eight. In response, Garry argues the evidence on this issue was conflicting, and the trial

10

court's resolution of the conflicting evidence was within the court's discretion. We disagree.

{¶48} Julie testified that Garry moved out of their Tennessee home in March of 2011 when their son was an infant. On cross-examination of Julie, Garry's counsel stated that Garry disagreed and believed he moved out of their shared residence in May of 2011, not March. However, Garry never testified on this issue. Julie's testimony was the only evidence.

{¶49} Thus, the trial court's child support calculation based only on counsel's statements is not supported by competent, credible evidence, and this assigned error has merit as well. On remand, the trial court should determine Garry's 2011 obligation consistent with Julie's testimony and award her nine months of child support for that year.

{¶50} Appellant's sixth alleged error asserts:

{¶51} "The trial court erred in its calculations of appellee's child support obligation in 2012 and child support arrearage for the year."

{¶52} Here, Julie claims the trial court miscalculated Garry's income for 2012 by $1,051, and as such, its child support obligation and arrearage determinations for that year were erroneous.

{¶53} As Julie contends, Garry's testimony and federal tax returns reflect $49,363 as Garry and his ex-wife's joint income for 2012. Garry testified that his then wife's only income was a $15,000 stipend. Thus, $49,363 minus $15,000 is $34,363. This plus the added depreciation expenses identified in his income tax return for the year of $1,818 and $4,451 equals $40,632. Accordingly, we agree that the court

11

miscalculated his 2012 income at $39,581, and thus, this assigned error has merit since the court's determination is not supported by competent, credible evidence.

**{¶54}** Furthermore, as stated under Julie's second assigned error, the trial court also has to recalculate Garry's income for 2012 based on the lack of evidence establishing any of his business expenses incurred that year.

**{¶55}** Julie's seventh assigned error alleges:

**{¶56}** "The trial court erred in its calculations of appellee's child support obligation in 2013 and child support arrearage for the year."

**{¶57}** Here, Julie challenges the trial court's failure to include all of her childcare expenses for 2013 in its child support calculations. She avers she spent $7,760 in 2013. However, the trial court's child support worksheet indicates that Julie incurred $7,515 in childcare expenses for 2013. Garry did not object to this expense, and there is no calculation or breakdown in the court or magistrate's decision explaining its determination.

**{¶58}** Julie submitted a receipt from Little Scholars in support of her testimony indicating their son's weekly rates incurred, activity fees, and payments made from 2013 through 2015. His weekly rates fluctuated from $175 as a toddler to $155 as a preschool-aged child. Although the trial court included an amount close to what Julie paid in 2013, we cannot ascertain the basis for its $7,515 determination to conclude that it is supported by competent, credible evidence. Accordingly, this assigned error has merit since the trial court's $7,515 figure is not supported by competent, credible evidence.

{¶59} Appellant's eighth assigned error avers: "The trial court erred in its calculations of appellee's child support obligation in 2014 and child support arrearage for the year by understating his gross income."

{¶60} Julie challenges the trial court's income determination for Garry in 2014. She claims Garry's failure to produce corresponding W2s to establish his income separate from his wife's income resulted in his income being understated by $12,615.

{¶61} "When determining a parent's income for purposes of calculating child support, the trial court must verify the income 'with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns. R.C. 3119.05. * * * Federal and state tax documents provide a proper starting point to calculate a parent's income, but they are not the sole factor for the trial court to consider. See *Houts v. Houts* (1995), 99 Ohio App.3d 701, 706, 651 N.E.2d 1031.

{¶62} "In many cases, income for child support purposes is not equivalent to the parent's taxable income. See *Helfrich v. Helfrich* (Sept. 17, 1996), Franklin App. No. 95APF12–1599, 1996 WL 532185. "R.C. 3119.01 defines 'income' for purpose of calculating child support * * * For a parent who is employed to full capacity, the gross income of the parent; * * * R.C. 3119.01(C)(5).

{¶63} "'Gross income' is defined by statute as 'the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions;

13

royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; * * * and all other sources of income. "Gross income" includes * * * self-generated income; and potential cash flow from any source.' R.C. 3119.01(C)(7)." *Foster v. Foster*, 150 Ohio App.3d 298, 2002-Ohio-6390, 780 N.E.2d 1041, ¶12-14 (12th Dist.)

**{¶64}** Garry testified that he and his wife earned $65,581 in 2014, but that his sole income was $46,053. Garry's 2014 tax returns reflect his federal adjusted gross income as $46,053. However, his adjusted gross income pursuant to his 2014 Missouri return is $58,668. Thus, the court's basis for its income determination is supported by the evidence. Nevertheless, as stated under the second assigned error, the court must recalculate Garry's support obligation for 2014 to the extent it allowed his unverified business expenses for that year to reduce his self-generated income.

**{¶65}** Appellant's ninth alleged error claims:

**{¶66}** "The trial court erred in its calculations of appellee's child support obligation in 2014 and child support arrearage for the year by failing to consider all of appellant's child care expenses."

**{¶67}** Here, Julie challenges the trial court's figure it used for her 2014 childcare expenses. She testified that she paid for her son to attend Little Scholars and confirmed that the statement she provided, exhibit 15, reflects the rates she paid, including registration and activity fees. Her Little Scholar statement confirms she paid a total of $8,505 in 2014. The court used $7,865 for her 2014 childcare expenses on its

14

worksheet. Because we cannot ascertain the basis for the trial court's calculation based on the evidence, this assigned error has merit.

{¶68} Her tenth assignment of error states:

{¶69} "The trial court erred in its calculations of appellee's child support obligation in 2015 and child support arrearage for the year by misstating his gross income."

{¶70} This assigned error again challenges the court's determination of Garry's income based on the difference in Garry's income listed on his 1040 for 2015 and his gross income listed on his Missouri state tax return. Julie claims the court understated his income by $22,565.67 for 2015. While we find no error since the court's decision is supported by some competent, credible evidence, it still must re-determine Garry's income for child support purposes as stated under Julie's second assigned error.

{¶71} Appellant's eleventh assigned error argues:

{¶72} "The trial court erred in its calculations of appellee's child support obligation in 2015 and child support arrearage for the year by failing to consider all of appellant's child care expenses."

{¶73} Here, Julie challenges the court's statement as to her childcare expenses for 2015 as understated by $717.50. Garry contends the court simply disregarded some of Julie's expenses as less than credible.

{¶74} She incurred expenses at Little Scholars and Willo-Hill Christian School. The statement submitted from Little Scholars reflects she paid $5,545 in 2015. The statement from Willo-Hill reflects a total of $4,712 in tuition and $330 in fees. However, their son only spent half of the year at Willo-Hill. Thus half of $4,712 is $2,356, plus the

15

$330 in fees, equals $2,686. And $2,686 plus $5,545 is $8,231; whereas the court found that Julie incurred $7,221 total in childcare expenses in 2015.

**{¶75}** Although the court arrived at a figure near the amount Julie was claiming, we do not see how it reached its determination. Thus, this assigned error has merit because its figure is not supported by competent, credible evidence.

**{¶76}** Her twelfth assigned error alleges:

**{¶77}** "The trial court erred in its calculations of appellee's child support obligation in 2016 and child support arrearage for the year by misstating his gross income."

**{¶78}** Julie argues the court miscalculated Garry's bonus income for 2016, and thus the basis for his support obligation was in error. She claims the court should have averaged his bonuses over a three-year period to determine his 2016 bonus potential.

**{¶79}** The magistrate explained her decision on this issue, stating: "Father's income for 2015 was $81,176.00, which included a bonus. Pursuant to O.R.C. 3119.05(D), bonus income is to be calculated by the lesser of the actual bonus or an average of bonus payments over three years; however, no evidence was presented as to bonus payments in other years; therefore, the three year average is $8,725.33. With the addition of depreciation, Father's income for 2015 is $67,086.33."

**{¶80}** Julie claims that Garry had to have a bonus in 2014 in light of his testimony that he earned a base salary of $45,000, but that his total 2014 income from employment was $58,668, and as such, the difference had to have been his 2014 bonus. We do not agree since his adjusted gross income was identified as $46,053,

16

which included his business income for that year. Accordingly, this argument lacks merit.

{¶81} Her thirteenth assigned error alleges:

{¶82} "The trial court erred in its calculations of appellee's child support obligation in 2016 and child support arrearage for the year by failing to consider all of appellant's child care expenses."

{¶83} She claims the court erred in calculating her childcare expenses for 2016. Julie testified that their son will attend Willo-Hill in 2016 during the school year and the day camp at the local YMCA during the summer. The associated costs are $4,712 for Willo-Hill plus $330 in fees for a total of $5,042. Her cost for the day camp is $126 per week, $25 per week for after care, and $20 per month to be a member of the YMCA. She did not testify to the precise number of weeks that the child would attend. Notwithstanding, assuming he only spent two total months or eight weeks at the YMCA, then Julie's costs were $1,648. Together, the two cost $6,690.

{¶84} Again, Garry did not challenge her claimed expenses for these providers, but the trial court included only $3,661 as her childcare expenses for 2016 without explanation. This figure does not comport with the evidence, and as such, Julie's thirteenth assigned error has merit.

{¶85} Appellant's fourteenth assignment of error asserts:

{¶86} "The trial court erred in failing to order appellee to provide comprehensive health care insurance coverage for the minor child."

{¶87} R.C. 3109.05(A)(2) states: "The court, in accordance with Chapter 3119. of the Revised Code, shall include in each support order made under this section the

17

requirement that one or both of the parents provide for the health care needs of the child to the satisfaction of the court * * *."

{¶88} "[T]he order shall include one of the following:

{¶89} "(1) A requirement that both the obligor and the obligee obtain private health insurance coverage for the children if coverage is available * * *." R.C. 3119.30(B)(1).

{¶90} R.C. 3119.30(A) states in part,

{¶91} "In any action or proceeding in which a child support order is issued or modified, the court * * * shall determine the person or persons responsible for the health care of the children subject to the child support order and shall include provisions for the health care of the children in the child support order."

{¶92} Julie avers the court erred in failing to order Garry to provide continuing health care insurance coverage for their son in spite of the fact that it considered his associated costs in the child support worksheet. However, the trial court does require Garry to provide the child's health insurance, albeit in less than clear terms. Its decision states:

{¶93} "It is therefore ordered:

{¶94} "* * *

{¶95} "Garry R. Graham II provides health insurance coverage for the minor child.

{¶96} "In the event the obligor loses his health insurance coverage for the minor child, the obligor's child support shall be administratively adjusted * * *. This child support obligation becomes effective on the first day of the month following the month in

18

which private health insurance coverage for the child is not provided in accordance with the order [because it] is unavailable or terminates."

{¶97} This language, coupled with its inclusion of Garry's health care related expenses on its child support worksheet, and Garry's testimony at the hearing regarding his employer's health care coverage make it clear that Garry is responsible for the minor's health care coverage as long as he has employer provided coverage available. Thus, this assigned error lacks merit.

{¶98} Appellant's fifteenth assignment of error asserts:

{¶99} "The trial court erred in failing to allocate between the parties the responsibility for payment of the uninsured and unreimbursed health care expense of the minor child."

{¶100} As Julie avers, R.C. 3119.32 *Contents of support order* requires a court to determine which parent or both are responsible for the child's out-of-pocket medical expenses. It states:

{¶101} "A child support order shall contain all of the following:

{¶102} "* * *

{¶103} "(D) A requirement that the obligor, the obligee, or both of them under a formula established by the court, with respect to a court child support order, or the child support enforcement agency, with respect to an administrative child support order, pay co-payment or deductible costs required under the private health insurance policy, contract, or plan that covers the children* * *." *Id.*

{¶104} As Julie contends, the trial court's order does not provide for the division of the child's unreimbursed and out-of-pocket medical expenses and co-pays. Pursuant

to R.C. 3119.32(D), a statement to this effect is mandatory. Thus, the trial court erred. On remand, the trial court must render an order consistent with the requirements of R.C. 3119.32.

{¶105} Appellant's sixteenth assignment of error asserts:

{¶106} "The trial court erred in failing to include in its ruling a provision requiring the parties to equally contribute to expenses for the child's extracurricular activities."

{¶107} Julie argues the court erred in failing to include the parties' agreement regarding payment for their son's extracurricular activities in its order. We disagree.

{¶108} As Julie argues, Garry agreed on cross-examination that he would be willing to pay for half of their son's extracurricular activities as long as he agreed on the activity. He stated: "I want a say in what he's doing. I don't want to have to be responsible for everything that she wants to sign him up for regardless of what it costs."

{¶109} While the parties agreed to share in their son's varying extracurricular activities, they nevertheless did not agree on the record which sports or activities they would be willing to pay for. Thus, the trial court's failure to include this "agreement" in its order is not an abuse of discretion since it is too indefinite to be enforceable.

{¶110} Appellant's seventeenth assignment of error asserts:

{¶111} "The trial court erred in failing to provide for the allocation in future years between the parties the right to claim the minor child as an income tax exemption."

{¶112} Julie alleges and Garry agrees that the trial court erroneously ordered the parties to claim the child as a tax exemption without the requisite analysis and determination.

{¶113} R.C. 3119.82 states in part,

20

{¶114} "Whenever a court issues, * * * a court child support order, it shall designate which parent may claim the children * * * for federal income tax purposes * * *. If the parties do not agree, the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children and, * * * the payments for child support are substantially current as ordered by the court for the year in which the children will be claimed as dependents. * * * the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children."

{¶115} The Ohio Supreme Court held in *Singer v. Dickinson*, 63 Ohio St.3d 408, 415-16, 588 N.E.2d 806 (1992),

{¶116} "The allocation of the dependency exemption provided by Section 152(e), Title 26, U.S.Code *may* be awarded to the noncustodial parent when that allocation would produce a net tax savings for the parents, thereby furthering the best interest of the child. Such savings would occur through allocation to the noncustodial parent *only if* the noncustodial parent's taxable income falls into a higher tax bracket than the tax bracket of the custodial parent. * * * If both parents' incomes are taxed in the same tax bracket, no net savings are realized by allocating the exemption to the noncustodial parent. In determining whether taxes would be saved by allocating the federal tax dependency exemption to the noncustodial parent, **a court should review all pertinent**

21

**factors, including the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state, and local income tax rates.** See *Hodges v. Hodges* (1988), 43 Ohio App.3d 113, 114, 539 N.E.2d 709, 710 (federal dependency exemption controls who claims state exemption). The juvenile court did not consider any of these facts." (Emphasis added.) *Id.*

{¶117} "The deduction presumptively belongs to * * * the custodial parent." *Williams v. Williams*, 11th Dist. Ashtabula No. 99-A-0008, 2000 WL 1460030, *6. And the burden is on the party seeking the deduction to produce the requisite evidence. *Id.*

{¶118} As in *Singer*, the trial court here did not consider the applicable factors in allowing Garry to claim the minor as a tax exemption. Its decision does not reflect it conducted the proper analysis and did not determine whether allowing Garry to claim the child was in his best interest. Accordingly, its determination that the parties should alternate claiming the child as an exemption is in error. Thus, we reverse its decision and remand for the trial court to determine this issue consistent with R.C. 3119.82.

{¶119} Appellant's eighteenth assignment of error asserts:

{¶120} "The trial court erred in failing to change the name of the minor child."

{¶121} R.C. 2717.01(B) authorizes a probate court to change a minor's name upon application by a parent or guardian. Julie, as the movant, has the burden to affirmatively show that the name change is in the child's best interest. *D.W. v. T.L.,* 134 Ohio St.3d 515, 2012-Ohio-5743, 983 N.E.2d 1273, ¶17; *In re Change of Name of Halliday,* 11th Dist. Geauga No. 2005-G-2629, 2006-Ohio-2646, 2006 WL 1459635, ¶18. Upon considering a proposed name change, the trial court must consider the best

interest of the child. *In re Willhite*, 85 Ohio St.3d 28, 706 N.E.2d 778, paragraph one of the syllabus(1999).

{¶122} In considering whether a change in name is in a child's best interest, a trial court should consider the following factors:

{¶123} "the effect of the change on the preservation and development of the child's relationship with each parent; the identification of the child as part of a family unit; the length of time that the child has used a surname; the preference of the child if the child is of sufficient maturity to express a meaningful preference; whether the child's surname is different from the surname of the child's residential parent; the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; parental failure to maintain contact with and support of the child; and any other factor relevant to the child's best interest." *Id.* at paragraph two of the syllabus.

{¶124} Appellate review is limited to determining if the trial court's decision in granting or denying a requested name change is an abuse of discretion. *In re Willoughby,* 11th Dist. Lake No. 2001-L-208, 2002-Ohio-6581, ¶8. We are not permitted to substitute our opinion for a trial court's decision absent an abuse of discretion. *Id.*

{¶125} Here, Julie asked to change the child's name from Gary R. Graham III to Trey Shendel. She testified that she wants him to have her last name since that is what people know him as at church, school, and throughout their community. She also said that she felt compelled to name their child after Garry since he threatened to leave her if she did not. Julie also said the boy thinks his last name is Shendel, and Trey is his nickname.

23

{¶126} The parties agree that the child generally goes by his nickname, but that school records reflect his given name.

{¶127} Garry, however, testified that he and Julie mutually agreed on their child's name; that Garry is very hurt by the requested name change; that the child takes pride in his name and refers to himself by his given name when visiting Garry; and that it is a bond between the child and Garry's family.

{¶128} In light of the evidence, we do not find the trial court abused its discretion denying the request to change the child's name. Julie's eighteenth assigned error lacks merit.

{¶129} Accordingly, the trial court's decision is affirmed in part, reversed in part, and remanded.

CYNTHIA WESTCOTT RICE, P.J.,

TIMOTHY P. CANNON, J.,

concur.

24