[Cite as *Hanshaw v. Hanshaw*, 2019-Ohio-3546.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| DAVID M. HANSHAW, SR. | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NOS. 2018-T-0083**<br>**2018-T-0084** |
| WENDY ANN HANSHAW, | : | |
| Defendant-Appellee. | : | |

Civil Appeals from the Trumbull County Court of Common Pleas, Domestic Relations Division, Case No. 2008 DR 00195.

Judgment: Affirmed.


*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, Ohio 44240 and *Sarah Thomas Kovoor,* Ford, Gold, Kovoor & Simon, LTD., 8872 East Market Street, Warren, Ohio 44484 (For Plaintiff-Appellant).

*Elise M. Burkey*, Burkey, Burkey & Scher Co., L.P.A., 200 Chestnut Avenue, N.E., Warren, Ohio 44483-5805 and *Daniel G. Keating*, Keating Law Office, 170 Monroe Street, N.W., Warren, Ohio 44483 (For Defendant-Appellee).


THOMAS R. WRIGHT, P.J.

{¶1}   Appellant, David Hanshaw, appeals the decision awarding custody of the parties' minor child to appellee, Wendy Zimmerman, formerly Wendy Hanshaw.  We affirm.

{¶2}   The parties were married in 2006 and had one child in 2007.  David filed for divorce in 2008.  The trial court adopted the parties' agreed shared parenting plan in its

final divorce decree in September of 2011. In July of 2012, Wendy moved to terminate the shared parenting plan and sought sole custody of the parties' daughter. In August of 2012, Wendy also moved to hold David in contempt for his continued failure to abide by the shared parenting plan. The guardian ad litem from the divorce proceedings was re-appointed, and Wendy subsequently moved for emergency custody of the child based on David's recent guilty plea in a criminal case and his admission in that case that he suffers from drug dependency and mental health issues. She later withdrew her emergency motion, and the matter was heard on her original motion to terminate.

{¶3} In July of 2014, the court terminated the shared parenting plan and named Wendy the child's legal custodian and residential parent. This decision, however, was subsequently vacated for reasons not relevant here. Therefore, the trial court held a custody hearing over several days from May through September of 2017. Throughout the proceedings, David argued for continuation of the original shared parenting plan in which he was designated residential parent.

{¶4} Following hearing, the magistrate issued a decision recommending termination of the parties' shared parenting plan and that Wendy be designated the residential parent and legal custodian. David filed four objections. The trial court overruled his objections and adopted the magistrate's decision.

{¶5} David's sole assignment of error asserts:

{¶6} "The trial court's finding that appellee should be established as residential parent of the child is against the manifest weight of the evidence and constitutes an abuse of discretion."

2

**{¶7}** David does not challenge the trial court's decision to terminate the shared parenting plan and as such, we do not address this aspect on appeal. Instead, he argues that he should have been named the residential parent, not Wendy, and that the trial court's decision in this regard is against the manifest weight of the evidence and an abuse of discretion.

**{¶8}** We review custody issues with great deference and do not disturb a trial court's decision unless an abuse of discretion is evident. *Bates-Brown v. Brown,* 11th Dist. Trumbull No. 2006-T0089, 2007-Ohio-5203, ¶ 18, citing *Miller v. Miller* , 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). An abuse of discretion connotes judgment that comports with neither reason nor the record. *Shendel v. Graham*, 11th Dist. Lake No. 2016-L-100, 2017-Ohio-4236, 92 N.E.3d 43, ¶ 9.

**{¶9}** "'Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. * * *'

**{¶10}** "The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. * * *

**{¶11}** "'The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * *

**{¶12}** "'* * *

{¶13} "'* * * A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal.'

{¶14} "This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does *not* translate to the record well." (Emphasis sic.) *Davis v. Flickinger*, 77 Ohio St.3d 415, 418-419, 1997-Ohio-260, 674 N.E.2d 1159 (1997).

{¶15} Thus, when an award of custody is supported by a substantial amount of credible and competent evidence, the trial court has not abused its discretion. *Id.*

{¶16} Here, the trial court terminated the parties' shared parenting plan under R.C. 3109.04(E)(2)(c), and R.C. 3109.04(E)(2)(d) states that "[u]pon the termination of a prior final shared parenting decree under [R.C.3109.04](E)(2)(c) * * *, the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable * * * as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made."

{¶17} And R.C. 3109.04(B)(1) provides that a court "shall take into account that which would be in the best interest of the children."

**{¶18}** "In determining the best interest of a child pursuant to this section, * * * the court shall consider all relevant factors, including, but not limited to:

**{¶19}** "(a) The wishes of the child's parents regarding the child's care;

**{¶20}** "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

**{¶21}** "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

**{¶22}** "(d) The child's adjustment to the child's home, school, and community;

**{¶23}** "(e) The mental and physical health of all persons involved in the situation;

**{¶24}** "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

**{¶25}** "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

**{¶26}** "(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * * ;

**{¶27}** "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

**{¶28}** "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." R.C. 3109.04(F)(1).

**{¶29}** Upon considering the applicable factors and the evidence, we find the trial court's decision naming Wendy residential parent and legal custodian is supported by a substantial amount of credible and competent evidence.

**{¶30}** On cross-examination David confirmed that he has a criminal history, including a conviction for aggravated menacing and he has had two civil stalking protection orders issued against him from two former spouses, not Wendy.

**{¶31}** David was also charged with several felonies involving a stolen vehicle, but the trial court granted him intervention in lieu of a conviction based on David's concession that he is drug dependent and has mental health issues. At trial, however, David greatly diminished his admissions in the criminal case and told the trial court that he did not fully read the statement in which he admitted to drug dependency. Instead, David testified that he only uses prescription medications that are prescribed to him and that he had treatment for alcohol issues, not drugs. David also attempted to explain away the criminal charges against him saying that an acquaintance sold him a car that he did not know was a stolen vehicle.

**{¶32}** David did admit to failing to abide by the court-ordered summer visitation schedule included in the parties' shared parenting plan. But he claims it was not supposed to be included in the parties' agreement, so he did not follow it. David agreed, however, that he never appealed the final divorce decree that included the shared parenting plan.

6

**{¶33}** David lives alone in Trumbull County, and Wendy lives with her parents in Painesville, about an hour and a half away. Wendy has been engaged to be married and her fiancée often stays with them. Wendy's brothers and their wives also live nearby. She described the child as having a good and loving family environment when the child is with her.

**{¶34}** During the period of shared custody, Wendy drove to the child's school two years in a row to attend their child's Christmas program only to learn that their daughter was not there or participating both years. Wendy never received a message from David letting her know not to attend.

**{¶35}** Wendy testified that she has been the child's custodial parent since 2014. She explained that when David was the residential parent, he would rarely show at the parties' pre-arranged meeting location for Wendy's visitation, and David rarely called to cancel. The parties only text message one another since they cannot communicate directly. She describes being afraid of David. She explained that during the shared parenting plan, it seemed like David had sole custody because Wendy had little access to their daughter.

**{¶36}** Wendy admits that her daughter misses a lot of school now that she lives with Wendy due to bullying issues, but Wendy feels that the issues have been improving with continued counseling. Wendy also explained that the child had to have seven of her baby teeth capped and was in a lot of pain beforehand. Wendy claims that the rotten teeth occurred while the child was in David's care.

**{¶37}** Wendy invited David to their child's father-daughter dance at her new school in Lake County and to parent-teacher conferences. And although David made allegations

7

of abuse against Wendy, she was never charged or arrested. The allegations were never substantiated.

**{¶38}** One of the child's therapists testified that the child told her that Wendy once forcefully grabbed her by the arm and that Wendy also hit her with a book bag. The therapist described the child as being stressed since she is stuck in the middle of her parents.

**{¶39}** A manager of a restaurant, with no connections to the parties, described an encounter during which Wendy was screaming and disrupting the entire restaurant. The child was with her at the time. Wendy was complaining that the ketchup contained alcohol. Wendy later explained she was embarrassed for her behavior that day, but that the ketchup was fermented and tasted like alcohol.

**{¶40}** The guardian ad litem (GAL) confirmed that the child gets along well with both parents. She was the GAL before the parties were divorced and was re-appointed for these proceedings. The GAL recommended terminating the shared parenting plan due to the parties' inability to communicate and get along.

**{¶41}** The GAL also went through the applicable statutory considerations under R.C. 3109.04(F)(1) and recommended that Wendy be named the residential and custodial parent because although both parties have their respective "issues," Wendy is the parent who is much more likely to honor the other parent's companionship. The GAL noted that once the child moved in with Wendy, the parties' visitation issues stopped; whereas David continued to deny Wendy access to their daughter during the parties' shared parenting. The magistrate and trial court agreed and emphasized that Wendy provides a more stable environment while David continually frustrated Wendy's companionship with their

8

daughter. Thus, the court found that naming Wendy as the custodial parent was in the child's best interest.

{¶42} Because the trial court's findings are supported by substantial, credible evidence, David's sole assigned error lacks merit, and the trial court did not abuse its discretion. The trial court is in the best position to judge the credibility of the witnesses, and we will not second guess its decision in this regard.

{¶43} Accordingly, the trial court's decision is affirmed.


TIMOTHY P. CANNON, J.,

MATT LYNCH, J.

concur.